No. 20.—WALLER D. WHALEY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] When a Juror has been put upon triors, and they have retired to make up their verdict, it is not proper to move the Court to send written instructions to the triors, to propound to the Juror a particular interrogatory, for the purpose of establishing his disqualification. The proper course is to have the triors brought into open Court, and instructed publicly and in the presence of both parties, touching the whole matter.

[2.] It is admissible for a witness to state, that he was induced to waylay a party suspected of a design to commit a felony, from information derived from a negro.

[3.] As a circumstance of guilt, it is competent to prove that the defendant offered to bribe one of his guards, in order that he might effect his escape.

[4.] While it is not right to encourage one citizen to tempt another to the commission of a crime; yet, when the initiatory steps have been already taken, it is excusable to connive at conduct which will lead to the detection of the offender.

[5.] Notwithstanding a witness may testify that the confessions of the prisoner were made under threats, still the Court may inquire what those threats were, in order to ascertain their sufficiency in law, to exclude the confessions.

[6.] An illegal question may be asked; still, if the answer is unexceptionable, the judgment will not be reversed on that account.

[7.] A memorandum made in pencil, in the pocket-book, taken from the custody of the accused, upon his arrest, may be read in evidence, without proof of its execution.

Larceny, in Baker Superior Court.    Tried before Judge WAR-REN, December Term, 1851.

Waller D. Whaley was placed upon his trial, under an indictment for the larceny of a negro, named Bracewell.   A. J. Swinney, a Juror, being placed upon triors, at the request of the prisoner, after the triors and Juror had retired to the Jury room, defendant's counsel moved the Court to send the following written instructions to the triors: "You are requested to ask Mr. Swinney if he did not, a few days ago, in Albany, say, if he (Swinney) could get upon the Jury, when Whaley was tried, he would send the d——d negro thief to the penitentiary?"   The Court refused the motion, and defendant excepted.

During the examination of Joel J. Gillon, a witness for the State, the following testimony was drawn out: "Witness instructed the negroes to go, and if they met with the person who wanted to take them away, for Bracewell to go to the house, get his clothes, and come back and let witness know which way they were going; and the report of the negro, when he came back, induced witness to change his position from the ·fork of the road to a position on the Starksville road."   Defendant's counsel objected to this evidence.   The Court overruled the objection, and defendant excepted.

The same witness testified, that "the morning after the arrest, defendant stated to witness that he had a family, and a stigma would rest upon them, if he was prosecuted; and that he had but forty dollars, and this was in gold, and that he would give it to witness if he would let him off, or let his gun miss him."

To the admission of this testimony defendant objected.   The Court overruled the objection, and defendant excepted.

The same witness testified, that "the negro had a budget

with him, when prisoner was arrested." Defendant objected, on the ground that witness had ordered the negro to get his clothes. The Court overruled the objection, and defendant excepted.

*William J. Wright,* a witness for the State, testified to certain confessions made to him by the prisoner. On cross-examination, he stated that the confessions were made after witness had threatened the prisoner. On being interrogated by the Court (defendant's counsel objecting) as to the character of the threat, he stated, that " after the arrest, witness asked the defendant if he had ever been in the County before? Defendant said he had, 10 or 11 years ago. Witness then said, from his manner and appearance, he must be the man who had stolen Mr. Peake's negroes, and sold them in Alabama; defendant said he was not; witness said he could tell, as the negroes were on Mr. Peake's plantation, and that he would send for them, and called for a boy to send; the defendant then took witness to one side, said he did not like to be exposed, and then made the confessions testified to."

The defendant's counsel moved to exclude the confessions thus made. The Court overruled the motion, and defendant excepted.

Counsel for the State asked the witness " what defendant said about having committed similar crimes before." Defendant's counsel objected. The Court overruled the objection, and defendant excepted.

*George Knight,* a witness for the State, testified, " that he never laid the plan to detect defendant, until he supposed there was some one in the neighborhood trying to steal negroes, and his suspicion was founded upon the information of negroes." Defendant's counsel objected to this evidence. The Court overruled the objection, and defendant excepted.

Counsel for the State proposed to read to the Jury the following memorandum, written by pencil, in the pocket-book of defendant: " Wilkins," " Paul Tarver's," (being the names of the owners of the slaves with whom defendant was proved to be in communication.) Defendant's counsel objected, on the

ground that it was not proved to be the hand-writing of defendant. The Court overruled the objection, and defendant excepted.

On these several exceptions, error has been assigned in this Court.

H. MORGAN, for plaintiff in error.

Sol. Gen. LYON and R. H. CLARK, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first question presented for our consideration is, whether, when a Juror has been put upon triors, at the instance of the prisoner, and they have retired to their room, it is competent for the defendant's counsel to move the Court, to send written instructions to the triors, to propound to the Juror a particular interrogatory, for the purpose of establishing his ineligibility.

We are clear, that such a practice is not only irregular, but fraught with the most mischievous consequences. The proper course would be, to have the triors brought into open Court, and there instructed publicly, in the presence of both parties, respecting the whole matter.

[2.] The next error complained of is, that the Court permitted Gillion, one of the witnesses sworn on the trial, to state, that in consequence of what was said to him by a negro, that he was induced to change his position in watching for the defendant.

We see no error in this. Suppose the witness had been influenced by some noise he heard—the barking of a dog, or the cackling of fowls—to change his position, would it not be competent for him to testify to the fact?

[3.] The third assignment is, that a witness was allowed to prove that the prisoner had offered him forty dollars in gold, to suffer him to escape. It is argued, that this attempt to bribe the guard, in order to effect his escape, is consistent with inno-

Whaley *vs.* The State of Georgia.

cence.    But that is not the test.    Is it no  index  of  guilt?    If flight is a circumstance, however slight,  which  tends  to  criminate the accused—then proof that the prisoner offered  money, in order to effect his escape,  is certainly admissible.

[4.] It was in proof, that the negro had a budget of  clothes with him  when the prisoner was  arrested.    Defendant's attorney objected to this testimony, upon the ground that the witness had ordered the negro to bundle up his clothes,  and  take them along.

It is conceded that it would  be  a  dangerous  precedent  to encourage one citizen to  tempt another to the perpetration of a crime, and then to array the  circumstances,  which  he  himself had contrived, in order to convict  him.    But  that  is not  this case.    The initiatory steps had been taken by  Whaley, to steal this slave.    It was necessary to  ascertain  whether he intended to  carry  off  the negro, and hence the  directions which  were given for his equipment for the journey.

[5.] Wm. J. Wright swore to  certain  confessions made  by the prisoner.    On his  cross-examination,  he  stated that  these were made through fear.    Upon being interrogated by the Court, (prisoner's counsel objecting,)  as to the nature of the threats, it turned out that the witness was mistaken, that he misapprehended the meaning of the term.    We hold that the Court was right in prosecuting the inquiry, which  he  did,  in order to  ascertain whether, in fact, any threats  were  used;  and  we  are  equally clear, that the statement when  made,  did  not  constitute such a threat as would exclude the confessions.

[6.] Counsel for the State  asked a witness what the  defendant said about having committed similar crimes  before?    The question was objected to, but allowed to be  propounded.    The answer was, that he stated, that  it  had  been  his  misfortune for a considerable time, but that he had never been interfered  with before.

Here, it will be perceived,  was an indirect  acknowledgment, though rather awkwardly expressed, that the prisoner had committed the present offence.    He admits  that  this was  not the first time he has been  engaged  in  inveigling  off  slaves; but

adds, that he was never caught before; thereby including the act with which he was then charged, in the same category with past transgressions of a like character. We see no objection to the answer at least, and if that is legal, we would not reverse the judgment, because it was elicited by an improper question.

[7.] The next error assigned, viz: that the witness, George Knight, stated that he was prompted by information derived from negroes, to waylay the prisoner, has already been considered, under the second head in the bill of exceptions.

[8.] Counsel for the State proposed to read to the Jury, the following memorandum, written in pencil, in the pocket-book of the defendant, and taken from his custody, "Wilkins," "Paul Tarver." These were the names of the owners of the slaves with whom the defendant was proven to be in communication. Defendant's counsel objected, on the ground that the entry was not shown to be in the hand-writing of the accused. But the Court overruled the objection, and the defendant, by his counsel, excepted.

If a paper is produced in Court, under notice, from the possession of the opposite party, it dispenses with proof of its execution. A document appended as an exhibit to a bill or answer, need not be proven by the adverse party. We think that the testimony in this case was properly admitted.