STATE OF MAINE *versus* JOHN G. TAYLOR.

In an indictment upon the statute providing for the punishment of any person who shall *burn* any building, it is sufficient to allege that he " set fire to" such building, — the terms being equivalents.

In an indictment upon c. 119, § 3, of the R. S. of 1857, for burning a barn " in the day time," it is not necessary to allege that the barn was within the curtilage of a dwellinghouse, that fact being immaterial, except where the burning is in the night time.

Proof of actual occupation and possession is sufficient evidence of the allegation of ownership.

THIS was an indictment against the defendant for maliciously, &c., setting fire to " a certain barn of one William D. Cook and one Sylvester Cook." The case was tried before GOODENOW, J., at April term, 1858.

To prove the allegation of ownership, the county attorney offered a copy of the record of a will, in the office of the Probate Court, by which the premises were devised to William D. Cook by one John Cook; and also an office copy of a deed of one undivided half of the premises from William to Sylvester Cook. These records were seasonably objected to by the counsel for the defendant, but were admitted.

Before introducing these records, the county attorney called William D. Cook as a witness, and he testified that he and his son, Sylvester Cook, occupied the premises together, and that they were in the actual possession and occupation of the barn at the time it was burnt.

The defendant was convicted, and he filed exceptions to the admission of the record evidence. He also filed a motion in arrest of judgment, alleging that the indictment was insufficient, in that it did not charge the defendant with having maliciously, &c., *burnt* the building, but only with having *set fire to it*; and also that it was insufficient in not alleging that the building was within the curtilage of a dwellinghouse. The motion in arrest was overruled, to which the defendant excepted.

The exceptions were argued by *Tapley*, for the defendant, and by *Appleton*, Attorney General, for the government.

*Tapley*, argued as follows: —

Chapter 119 of the R. S., § 1, creates and enumerates certain offences, among which is the offence sought to be charged in this case. If the indictment does not properly set forth any of these offences, judgment ought to be arrested.

It is apparent, from an inspection of the indictment, that none of the offences mentioned in the first two sections are there set forth. It was under some other provision of the statute that the indictment was framed.

Section three provides, "whoever willfully and maliciously sets fire to any meeting-house, court-house, jail, town-house, college, academy, or other building erected for public use, or to any store, shop, office, barn, or stable of another, within the curtilage of a dwellinghouse, so that it is thereby endangered, and such public or other building is thereby burnt in the night time, shall be punished by imprisonment for life, or any term of years;" so far, the section proceeds to declare the offence.

What are the offences declared in this section?

1. The burning of public buildings wherever situated.

2. The burning of private buildings within the curtilage of a dwellinghouse.

It may be argued that the words "within the curtilage of a dwellinghouse," apply only to the stable therein mentioned, and not to the other private buildings.

We say, in answer to this proposition : —

1. The grammatical construction of the section is such as to forbid such a conclusion. Language can hardly make it plainer than now. If the words "store, shop, office, barn," are disconnected from the words "curtilage of a dwellinghouse," they are also from the words "of another."

If the words "curtilage of a dwellinghouse" apply only to the word "stable," so do the words "of another," and the construction would forbid the burning of one's own buildings, within the curtilage of his own dwellinghouse, although an hundred miles from any other building.

2. Such a construction would place a stable upon different grounds from that of a barn or other building, without any reason or cause whatever, and would be a most ridiculous provision of law.

3. This section of the statute was from R. S. of 1841, c. 155, § 3, which provides : "If any person shall willfully and maliciously set fire to any meeting-house, court-house, jail, town-house, college, or academy, or any other building erected for public use, or to any store, barn, stable, shop or office of another, *being* within the curtilage of a dwellinghouse," &c. This uses the phrase "being within the curtilage of a dwellinghouse," while the present statute omits the word *being*. The statute of 1841 also makes a comma after the word "another," and before the word "being," showing clearly that the phrase applies to all the buildings named of a private character.

It cannot be supposed that there was, in the revision of these statutes, any design to change the law, and, if the sense is more plainly indicated by the phraseology of the statute of 1841 than by that of 1858, it is competent to refer to it for explanation.

4. The statute under consideration requires, in order to complete the offence, that the dwellinghouse shall be endangered; the language is "so that it is thereby endangered," plainly indicating the neighborhood of a dwellinghouse, (that

is, the curtilage of it.)   The section proceeds still further, and reads " and such public or *other* building is thereby burnt," &c., coupling the public buildings together as one class, and the private buildings as another, under the term " other building."   We therefore conclude, —

1. That the burning of a barn, without the curtilage of a dwellinghouse, is not provided for in this section.

2. That, to commit the offence here charged, it must be within the curtilage of a dwellinghouse, " so that it is thereby endangered."   The offence is not committed, if within the curtilage of a dwellinghouse, if the house is not endangered, or if without the curtilage of a dwelling.

It may be argued that the last clause of the section touches the case of a barn, without the curtilage of a dwellinghouse.

Burrill, in his Law Dictionary, says curtilage is " a yard, courtyard, or piece of ground lying near to a dwellinghouse, and included within the same fence."   The inclosed area around a dwellinghouse.   He says, " in its most comprehensive and proper legal signification, it includes all that space of ground and buildings thereon, which is usually inclosed within the general fence immediately surrounding a principal messuage and out-buildings and yard closely adjoining to a dwellinghouse."

Taking this as a correct definition of the term, let us examine the last clause of section three, and see what its provisions are.   It reads, " but if such offence was committed in the day time, or without the curtilage of, and without endangering a dwellinghouse, by imprisonment not less than one nor more than ten years."

"If such offence;" what offence ?   Where are we to go to determine what offence ?   What provisions of law are to govern us in determining whether the offence was committed ?   Why, most clearly, the first part of the section.   Does the latter clause purport to be a declaration of an offence ?   Certainly not, but on the contrary expressly refers to another.   We cannot go below the semicolon to ascertain what offence is meant by " such offence."

Now what offences have we found are there described ?

1. The burning of public buildings, wherever situated.

2. The burning of private buildings, within the curtilage of a dwellinghouse.

Now to which of these must the last clause in this section necessarily refer ?   Most manifestly to the public buildings. It can refer to no other, for the other buildings are those within the curtilage of a dwellinghouse; and we have seen that, to constitute an offence under this section, they must be within the curtilage of a dwelling.

The statute of 1841 had no such rider to it as this.   The law upon the subject, prior to the present revision, was embraced in sections 3 and 4 of chapter 155 of R. S. of 1841, and chapter 95 of laws of 1849.   The terms of these statutes were plain and intelligible.

The commissioners have noted the statute of 1849, as embraced in section 3; whereas, in fact, it is in section 4 of chapter 119.

Under the old revision, the burning of public buildings, or private ones, within the curtilage of a dwellinghouse, in the night time, was punished by provisions of § 3, c. 155.

The burning of such buildings in the day time was punished by provisions of § 4 of the same chapter.

In the present revision, they undertook to embrace the whole within § 3, c. 119.

Under the old revision, and prior to 1858, the burning of private buildings, without the curtilage of a dwellinghouse, was punished by provisions of § 5, c. 155, and c. 95 of laws of 1849.   These are now embraced in § 4, c. 119, R. S. of 1857, which is the section under which proceedings must be had in such cases.

Section 4, of chapter 119, provides that " whoever willfully and maliciously burns any building of another, not mentioned in the preceding section," (that is, any building not a public building, and not within the curtilage of a dwellinghouse,) " shall be punished," &c.

Under this section, we say, it is necessary to allege that

the defendant *willfully and maliciously burned* the building. In this the offence consists, and it must be declared in plain and unequivocal terms. It is material, and must be alleged, as well as proved.

This indictment charges that the defendant feloniously, willfully and maliciously set fire to the barn, and that by the kindling of such fire the barn was burnt.

The section we are considering requires the government to allege and prove that defendant willfully and maliciously burned the building, while the indictment charges only that he set fire to it.

No provision is made in this section for the case of setting fire to, whether maliciously or otherwise.

The indictment does not charge that anybody willfully and maliciously burned the barn, or that it was willfully and maliciously burned. For aught that appears in the indictment, the barn was burned accidentally.

It declares that it was willfully and maliciously set fire to, and afterward, by the kindling of such fire, it was burned. By whom? By accident or design? The indictment is silent. It does not even allege that it was burned by reason of the setting fire to it as alleged, which certainly would be necessary under section 3, if that was applicable to the case. The language of that section is, " and such public or other building is thereby burnt." The offence is not complete unless it is thereby burnt, that is, by the setting and not by the kindling of it afterwards.

The indictment charges that sometime in the day time the fire was set, and that by the kindling of such fire the barn was burnt and consumed in the day time of said day. For aught which here appears, the fire may have been set at 5 o'clock before noon, and kindled at 5 o'clock in the afternoon. So it may have been set by defendant and kindled by some one else.

We have thus far proceeded upon the proposition that the indictment not charging the barn to be within the curtilage of

a dwellinghouse, it is presumed to be without. We suppose there can be no question of this.

We say, therefore, —

I. The barn was without the curtilage of a dwellinghouse.

II. That the offence is not punishable by R. S., c. 119, § 3.

III. That burning such a barn is punishable by § 4, same statute.

IV. That, under § 4, it is necessary to allege that the barn was willfully and maliciously burnt by the defendant.

V. That the indictment does not so allege.

VI. That, under § 3, it is necessary to allege that the buildings were either public buildings, or private buildings within the curtilage of a dwellinghouse, and that they were maliciously and willfully set fire to, and that they were thereby burned, and that a dwellinghouse was thereby endangered.

VII. If our construction of this section is incorrect, it was necessary to allege that it was willfully and maliciously set fire to and was thereby burned, which the indictment does not formally or substantially allege.

The offence at common law is like that of the statute, and consists in willfully and maliciously burning the property of another; and the indictment must distinctly aver this fact.

This indictment purports to be founded upon the statute, and can receive no aid from the common law; maliciously setting fire to a building, at common law, was, at most, but a misdemeanor, if there was no malicious burning. It was not a felony. This indictment charges this act to have been done feloniously.

We believe the indictment in these respects is fatally defective, and good neither at common law nor by statute.

The opinion of the Court was drawn up by

DAVIS, J. — The indictment in this case charges that the defendant, " in the day time, maliciously, &c., set fire to a certain barn," &c., and that, " by the kindling of such fire, said barn was then and there burnt and consumed."

It is argued that the indictment is founded upon the R. S., c. 119, § 4; "whoever willfully and maliciously *burns* any building," &c. And, it is said, that "setting fire" to a building is not the same as "burning" it.

The indictment was evidently drawn from a form based on the Massachusetts statute of 1804, c. 131, which was followed by our statute of 1821; "if any person shall willfully, &c. set fire to any building, and, by the kindling of such fire, such building shall be burnt," &c. But, if it is the same to "set fire to" a building as to "burn it," the indictment is sufficient, assuming that it is founded on the fourth section of the chapter referred to.

It is not necessary, to constitute arson, that any part of the building should be consumed. If there is actual ignition of any part, however small, though the fire immediately go out of itself, the offence is committed. 1 Hale, P. C. 568; 1 Gabbett, 75. It can hardly be contended that "setting fire to" a building signifies any less. The words "set fire to" and "burn" are generally understood as equivalents. 1 Bishop's Crim. Law, § § 188, 189. And it is very evident that they are used synonymously in our statutes.

But if it were otherwise, it would not affect this case. We are satisfied that the indictment is well drawn upon the third section of chapter 119 of the Revised Statutes. The "offence" referred to in the second clause is that of "setting fire to" any building previously mentioned. This offence is of two grades. If the building set fire to is a meeting-house, court-house, jail, town-house, college, academy, or other building erected for public use, and it is burnt in the night time, it is an offence of the higher grade. So, if it is a store, shop, office, barn, or stable, and is within the curtilage of a dwellinghouse, so that such dwellinghouse is endangered, and it is burnt in the night time, it is an offence of the higher grade. But if any such building, of either class, is burnt in the day time, it is an offence of less magnitude. Or, if it is a building of the class last named, and is without the curtilage of any dwellinghouse, and no dwellinghouse is endangered there-

State *v.* Taylor.

by, it is a less offence, though burnt in the night time. Such, we believe to be the plain and obvious construction of the statute.

It follows that, if the building is alleged to have been burnt in the day time, it is not necessary to allege whether or not it was within the curtilage of a dwellinghouse; for that fact is entirely immaterial.

The building which was burnt is alleged, in the indictment, to have been the property of William D. Cook and Sylvester Cook. It was necessary to prove this ownership as alleged. 3 Greenl. Ev. §. § 10, 57. It was proved, at the trial, to have been in the actual occupation and possession of the persons named. This was sufficient evidence of the allegation in the indictment. R. S., c. 131, § 10. The defendant was not injured by the admission of the records.

*Exceptions overruled.   Judgment on the verdict.*

TENNEY, C. J., HATHAWAY, CUTTING, MAY, and GOODENOW, J. J., concurred.