JORDAN *v.* THE STATE, 32 Miss. Rep., 382.

### HOMICIDE.

A confession of guilt by the accused cannot be given to the jury in evidence against him on a trial for murder, unless it appears that such confession was entirely voluntary. The prisoner has the constitutional right to remain silent as to his guilt; and hence, if a confession be extorted or induced by violence or threats of violence, or by hope of reward or immunity from punishment, it cannot be given in evidence to the jury.

The state, itself, being restrained by the constitution from compelling an accused party to testify against himself, the courts can give no countenance or sanction to such compulsion when exercised by private persons. Hence, all that may be thus wrung from the accused must be rejected.

In error from the circuit court of De Soto County. SCRUGGS, J. *Clapp & Strickland* for prisoner.

The grounds of error relied upon in this case are these :

First. The admission of the confession of the accused, which was obtained by threats and violence. Second. The overruling of the motion for a new trial.

1. That the confession of the accused was not under the circumstances admissible in evidence ; see Barb. Cr. L. 419–21. It violates the last clause of the 10th section of the 1st. art. of the constitution.

There is no proof of *malice*, express or implied, without which the offense was not murder.

The only pretext for the charge of *express* malice is the testimony of Benton, a slave, which was not to be relied on as true; and even if true, proves nothing but an idle braggadocio, such as

may at any time be overheard in the conversation of negroes, who have but the intellect of children, without their moral culture.    There was no threat on the part of the defendant *to take life*, but simply to use such means as were necessary to make his escape, if he should run away and be arrested.

Malice cannot be implied either from the relative position of the parties, (the defendant not being a *felon*,) nor from the use of a deadly weapon.    This can only be implied where there was a design to take life.    Cotton v. The State, Opinion Book, 152. The object for which the deadly weapon was used is open for explanation. It is not enough that the evidence against the accused goes to show his guilt.    It must be inconsistent with the reasonable supposition of his innocence. 3 Greenl. Ev., 31.    The knife may have been obtained by defendant to procure food or resist the attacks of dogs.    The circumstances warrant the inference that the defendant never had the knife which is referred to in the proof, but that it was pretended to have been found by the slave, Allen, and there is a strong probability that the homicide was in fact accidentally perpetrated by Mallory himself.  Had there been no charges given by the circuit judge, the verdict of the jury was manifestly contrary to law and the evidence, and should have been set aside.

But the court incorrectly charged the law.    The last clause of the first charge given for the state excludes the idea of explaining the intent with which a deadly weapon is used, and is contrary to the rule laid down in Cotton v. State.

The third and fourth charges on behalf of the state, and the last charge volunteered by the court in explanation or modification of the charges given on behalf of the defendant, proceed upon the idea that the law applicable to the arrest of felons applies to runaway slaves, and therefore misled the jury.

Looking to the peaceful and tractable disposition of the defendant, as shown by the proof, and reviewing all the circumstances connected with the homicide, the case is one appealing powerfully to the justice as well as the mercy of the court.

In addition to authorities cited, see Jennings v. Fundeberry, 4 M'C., 161 ; Richardson v. Dukes, ib., 156 ; Witsell v. Earnest

and Parker, 1 N. & M'C., 182 ; Copeland v. Parker, 3 Iredell, 513.

*D. C. Glenn,* attorney general, argued the case orally.

Fisher, J.:

This was an indictment found by the grand jury at the June term, 1856, of the circuit court of De Soto county, charging the prisoner with the murder of a slave named Aaron, upon which the prisoner was convicted and sentenced at that term of the court.

It is first assigned as error, that the court below erred in permitting certain statements or confessions of the prisoner to be given in evidence before the jury. One Mallory being introduced as a witness on the part of the state, testified that after the killing of the slave Aaron, and after the arrest of the prisoner, he, witness, and one Williams, went to the prisoner, and attempted to draw him into conversation in regard to the killing of Aaron ; that the prisoner refusing to answer their questions, they told him that if he did not talk they would kill him ; the witness having a pistol then cocked in his hand, with which he threatened to shoot the prisoner ; and the other a stick, with which he threatened to strike, and did strike the prisoner one blow. Under the influence of these threats, and violence thus inflicted, the prisoner proceeded to state the time and place, when and where he lost his knife, describing it at the same time. The court admitted this evidence to go to the jury, upon the statement of the district attorney, that he expected to show, by other testimony, that, upon search being made, a knife corresponding with that described was found at or near the spot indicated by the prisoner. It is insisted by counsel, that the knife found upon this search does not correspond with that described by the prisoner, and that the court therefore erred in admitting the testimony. Counsel is, doubtless, right in his construction or view of the testimony, as well as the rule of law, that the place of finding, and knife found, must both agree with the description given by the accused, and, if a discrepancy appeared as to either or both, the court should have excluded the testimony. We prefer, however, not to rest our decision on this point, upon this

ground, as it would seem to sanction, at least to some extent, the legality of the testimony, as well as to give countenance to the unauthorized mode by which it was procured.

If there is a principle which may be regarded as settled, in the criminal jurisprudence of this country, it is, that the accused has the right under any and all circumstances, to maintain his silence in regard to the commission of the crime alleged against him, and the rule which protects him against a full confession of guilt, if it appeared that the confession had been extorted by violence, also protects him against testimony which could only be dicovered, or made available through the instrumentality of such confession, for otherwise the rule could always be successfully evaded. The rule which excludes the whole confession must necessarily exclude all its parts. That which protects a man against the principal thing, must, of course, protect him against its incidents. The rule which secures a man against lawless violence, must, of necessity, to be efficacious, secure him against the consequences of such violence. It is no answer to say that the confession was true; the question, and the only question which can be considered is, whether the confession was voluntary, extorted by threats or violence, or induced by the hope of reward, or immunity from punishment. It was not only the right of the party accused, to preserve his entire silence in regard to the killing, but to resist force by force, to compel him to act otherwise, if it had been in his power to employ such force. So far from the means employed to procure the confession being sanctioned by law, it is not even within the power of any branch of the government, as at present organized, to give to such means any legal validity whatever. He could not be compelled by any of the government authorities to give evidence against himself, and an express statute, authorizing such a course of proceeding, would be simply a nullity under the constitution. It will certainly require no argument to show that there can exist in this state no rule of the common law, in regard to a particular subject, when an act of the legislature on the same subject would be nugatory. To state the proposition is to decide it. Let us then apply the principle to the case at the bar. Can it be contended for a moment, that a confession extorted by a threat of violence, extending to even

the life of the accused, would be admitted as evidence against him, merely on the ground that the violence was threatened by private individuals, and not by the officers of the government. If it is true that a person, though accused of crime, is still protected by law, upon what principle can it be contended, that his act shall bind him, if it shall appear that the act was the result of force, employed by persons in violation of this right? Must all, or only a part of that which was wrung from him be treated as if it had never been uttered? There can certainly be but one answer to these inquiries. The state being powerless as to this mode of procuring testimony, can give no countenance or sanction to a similar mode, when employed by individuals. The power which restrains the state, equally restrains her citizens in this respect. To hold otherwise would not unfrequently expose the accused to the excited passions or fury of that class of population who in all countries are the subjects upon whom the criminal jurisprudence of the government can be most beneficially employed.

We are therefore of opinion, that the court below erred in admitting the testimony.[1]

Judgment reversed and *venire de novo* awarded.

---

[1] Before any confession can be received in evidence in a criminal case, it must be shown that it was voluntary. Wharton Am. Cr. Law, 219; Archbold Cr. Pr. & Pl., 126, 127; 2 Russell on Crimes, 825; 1 Greenl. Ev., 219; 1 Phill. Ev., 401; 2 East P. C., 659; Rex v. Tyler, 1 C. & P., 129; Rex v. Enoch, 5 C. & P., 539; Rex v. Court, 7 C. & P., 486; People v. Ward, 15 Wend., Roscoe Cr. Ev., 37 *et seq.* If any inducement by promise of favor or by threat be held out to the prisoner—as by telling him "he had better tell all he knew" (Rex v. Kingston, 4 C. & P., 387; Rex v. Gardner, 18 Law J., 1 M., 2 C. & K., 920); "I'll forgive you if you will tell the truth," (C. & M., 534); "it is of no use to deny it, as every body knows you did it" (Rex v. Mills, 6 C. & P., 146); Archbold Cr. Pr. & Pl., 127. In Alabama, where it was proved that a slave was arrested, tied and left by his master in charge of a third person, to whom he immediately after made a confession, proof that the master "had always been in the habit of tying his slaves when they were charged with any matter, and whipping them until they confessed the truth, and that he had frequently treated the prisoner in the same way," was held admissible in order to determine whether the confession was induced by hope or fear. Spencer v. State, 17 Ala., 192; see Franklin v. State, 28 Ala., 9. In the same state, a slave's confessions to his master were excluded because the latter said to him: "Boy, these denials will only make the matter worse;" and the repetition of them before the examining magistrate in the presence of the master was also ruled inadmissible, the magistrate having neglected to caution him as to their effect. Wyatt v. State, 25 Ala., 9. In the case of Dick v. State, 30 Miss., 593, supra p. 811, where a white person remarked, in the hearing of a slave who was charged with the murder of his master, that "it would

WILLIAMS *v.* THE STATE, 32 Miss. Rep., 389.

### HOMICIDE.

Jurors in capital cases should always be entirely impartial between the state and the accused; and it is the duty of the court to see that the jury is composed of men above all exceptions in this respect.

A large class of the community doubt the expediency of capital punishment, others have a strong repugnance to it. And some few individuals sincerely entertain conscientious scruples against it. It is the latter class who are disqualified from serving as jurors in capital cases, "provided only, however, that their scruples are such as would prevent them from finding a verdict according to the evidence." The disqualification of this class is too firmly settled to admit of controversy.

The jury are not to decide questions of law in criminal, any more than in civil cases. In this country, as well as in England, the courts are the judges of the law as much in criminal as in civil cases. The court here adopts the language of Judge Story,[1] in the case of U. S. v. Battisto, 2 Sumner, 243. But the court is authorized to instruct the jury only in writing, at the request of the parties, and upon contested questions of law applicable to the issue.

---

be better for the guilty to confess, that the innocent might not be punished," it was held that a confession thus obtained was admissible.

Where a previous confession is obtained by improper means, any subsequent confession given on its basis is inadmissible. Roscoe Cr. Ev., 45, 46; Moore v. Com., 2 Leigh, 701; State v. Guild, 5 Halst., 163; Case of Bownhas et al., 4 Rogers, Rec., 136; Case of Stage et al., 5 ib., 177; Case of Milligan et al., 6 ib., 69; State v. Roberts, 1 Dev., 259; Peter v. State, 4 S. & M., 31; Van Buren v. State, 24 Miss., 572; Com. v. Knapp, 10 Pick., 477; Com. v. Harman, 4 Barr, 269; Whaly v. State, 11 Ga., 123; Com. v. Taylor, 5 Cush., 505; Conley v. State, 12 Mo., 462; State v. Nash, 12 La., 895; State v. Fisher, 6 Jones Law, 478; Simon v. State, 36 Miss., 636; 2 Russell on Crimes, 826; 1 Greenl. Ev., 221; Maynell's case, 2 Lewin's Cr. Cases, 122; Sherrington's case, ib., 123; Rex v. Cooper, 5 C. & P., 135; Wharton Am. Cr. Law, 694; Deathridge v. State, 1 Sneed, 75; 2 Russ. on Cr., 832.

But the presumption of a continuing influence may be repelled; and then a subsequent confession becomes admissible. Rex v. Sexton, 6 Peters, 83; such presumption may be removed by the length of time intervening between the threats and the examination, from proper warning of the consequences of such confession, or from any other circumstances that might be reasonably considered sufficient to dispel the fears induced by the threats. Peter v. State, 4 S. & M., 31; Com. v. Knapp, 10 Pick., 477; State v. Roberts, 1 Dev., 259; State v. Gould, 5 Halst., 163; 1 Greenl., Ev., 221; Wharton Am. Cr. Law, 694; 2 Russ. on Crimes, 824, 836; State v. Hash, 12 La. Ann., 895; State v. Carr, 37 Vermont, 191; 2 Stark. Ev., 36.

[1] STORY, J., in summing up, to the jury said: "Before I proceed to the merits of this case, I wish to say a few words upon a point suggested by the argument of the learned counsel for the prisoner, upon which I have had a decided opinion during my whole professional life. It is, that in criminal cases, and especially in capital cases, the jury are judges of the law as well as of the fact. My opinion is that the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue. In such of these cases their verdict when general, is necessarily when compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact. In each they have the physical power to disregard the law, as laid down to them by the court. But I deny, that in any case, civil or criminal, they have the moral right to decide the law, according to their own notions or pleasure. On the contrary, I hold it to be the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law as it is laid down by the court," etc.