## BINES *v.* THE STATE.

1. Before a person charged with a particular crime can be lawfully found guilty thereof, it is necessary to establish the corpus delicti.   This can not be done by the mere extra-judicial confession of the accused.   There must be aliunde proof of the corpus delicti.

2. In a criminal trial, evidence that the accused while confined in prison, upon being interrogated as to his conduct upon a certain occasion, stated that he had intended to attempt to overpower the jailer and effect his escape, is admissible as a circumstance against him.

Argued July 22, — Decided August 11, 1903.

Indictment for arson.   Before Judge Evans.   Effingham superior court.   June 15, 1903.

*Julian Hartridge Smith,* for plaintiff in error.
*Livingston Kenan, solicitor-general,* contra.

FISH, P. J.   The plaintiff in error was found guilty of the crime of arson, and upon his motion for a new trial being overruled he excepted.   The motion for a new trial was based upon the general grounds, upon alleged newly discovered evidence, and alleged error in overruling a motion to rule out certain evidence introduced by the State.   Briefly stated, the evidence upon which the accused was found guilty was substantially as follows : The barn which he was charged to have feloniously burned was in the town of Marlow, belonged to J. F. McEachern, contained corn, hay, fodder, cottonseed hulls, and rice-flour, and was discovered to be on fire shortly before or shortly after midnight.   At the time of the fire, and for a considerable period of time before, the accused was in the employment of the owner of the barn, working as a general helper around the owner's home and little farm, and feeding his horse and

cattle. The keys to the barn had been kept hanging in the hall of McEachern's residence, and the accused generally had had free access to them and carried them to and from the barn; but a short time before the fire occurred McEachern had moved to Jacksonville and left these keys in charge of Mr. Yandall, a boarder, who was living in the residence, and he had carried them from then until the fire, in order to see that the barn was always locked and nothing taken from it. After Yandall took the keys and saw to the feeding of the stock, the accused seemed, to Yandall, from his appearance and demeanor, to be mad. The accused lived, according to some of the witnesses, about a quarter of a mile from the barn, and according to others about a half mile therefrom. When the fire was discovered an alarm was raised, a gun being fired several times, and there being a good deal of hollowing. The accused did not come to the fire that night, but made his appearance at the scene the next morning and assisted in putting out the smouldering embers. Upon being then asked why he did not come to the fire, he said he never gave it a thought. Several other people lived in the same immediate neighborhood as the accused, and none of them came to the fire. The accused and a number of others, on the night of the fire, attended meeting at a church about half a mile below Marlow, and the people left the church after the ten-o'clock train had passed, and the defendant, in company with some of his neighbors, went in the direction of his home. One of the State's witnesses testified that he lived within one hundred feet of the defendant's house, and that after he left the church he went to his home and went to sleep and did not wake up until the next morning. A witness named Anna Duncan testified that she lived right across the street from the house of the accused; that on the night of the fire she went to bed after she got through her work, and some time in the night her son came and awaked her, and she let him in the house; that in a few minutes after her son came in and went to bed she heard the accused rattling a chain against the door, and, after the chain rattled, she heard a small whistle which she thought ought to be the defendant's whistle; that she recognized his whistle, for she knew "he has that low whistle ever since his mother has been dead."

On the morning after the fire the accused was heard to say that he "didn't reckon there would be any more hell raised about the

keys, now." On the day after the fire, Mrs. McEachern said to the defendant that if he had been at the church on the previous night he would have seen the fire; and asked him if he saw the fire "last night," and he replied: "No, ma'am, I went home and went to bed." He also said to her little daughter: "You know the book you gave me. I read it a while and went right to bed." The jailer testified, that while the accused was in jail he went in there to give him his breakfast, and "he played off asleep or crazy;" that the accused was lying down with his head against the wall of the cell; the witness called him and he did not answer, and the witness kicked the wall to awaken him, and still got no response, and then went out into the corridor and saw that the accused was watching every movement that he made. The witness went out and stayed a good while and came back and found the accused up, questioned and talked to him a good deal about it, and the accused then said "his intention was to make his escape some way or other as he could," that if he could have gotten the jailer in his cell, he was going to get out and have a little combat with him and make his escape. A witness named Barney Jackson testified that he lived in Savannah and was sent up to Marlow as a detective; that he found out where the accused lived, and went to his house one night about nine or ten o'clock — had never met him before, — and told him he would like to get a place to stay if he could, and asked the accused if he could take him in for the night; that the accused told him he could not, as he was looking for some one to come over there, but if the witness would go off and come back later, he, the accused, would be "more than apt to let him [him] stay over with him;" that the witness did not go back there that night, but went back the next morning about ten o'clock, found the accused building a fence, and, after some considerable conversation with him, told the accused that his, Jackson's, home was in Montgomery, Ala., and that he had to make his escape from there, and when the accused asked him what for, he said: "Some white folks, who I had been working for, owed me seventeen or eighteen dollars, and I had to set the stable on fire, with two or three horses;" and then the accused said he was working for Mr. McEachern and used to handle the keys, that the lady let him handle them, and he used to have a good thing, but finally she took the keys away from him; and that he, about a month before this conversation, after the crowd

at the church had disappeared, concealed himself and went over to Mr. McEachern's barn and set it on fire. The accused introduced no evidence. In his statement to the jury, he said he was at the church "that night," and when the "church was out" went home, and knew nothing about the fire until the next morning about six o'clock. He did not deny anything the witnesses had testified.

1. It seems to us very clear, from this evidence, that the accused was unlawfully convicted. The evidence is insufficient to support a verdict of guilty. There was no proof whatever of the corpus delicti, except the confession of the accused, made to a negro detective, upon a few hours acquaintance and under circumstances which rendered the story told by this witness not very plausible. The jury, however, believed the testimony of this witness to be true, and therefore we are to take the confession as having been proved. Before there can be a lawful conviction of a crime, the corpus delicti, that is, that the crime charged has been committed by some one, must be proved. The mere confession of the accused is not sufficient to establish the corpus delicti. This rule is well established, in this country at least, and our own case of *Murray* v. *State*, 43 *Ga.* 256, is, so far as this court is concerned, controlling authority to this effect. In that case the accused was charged with having feloniously burned a gin-house. He confessed that he "put fire to it about one o'clock at night;" and the State proved that the house was consumed by fire about the hour of one o'clock at night, and that the defendant resided about a mile from the spot. It was held that under the section of the code which declares that "a confession alone, uncorroborated by other evidence, will not justify a conviction," the evidence was insufficient to sustain a verdict of guilty. Judge McCay said: "There is, as we understand it, really nothing here but the confession. There is not even the corpus delicti, since there is no evidence that the gin-house was not accidentally burned." The great weight of authority, in this country, is that before a confession will authorize a conviction, it must be corroborated by evidence which, independently of the confession, tends to establish the corpus delicti. Some of the courts hold that the corpus delicti must be proved by evidence, other than the confession, beyond a reasonable doubt. Others hold that when the confession is supported by other evidence which, in and of itself, tends to establish that the particular crime charged has

been committed by somebody, the corpus delicti is sufficiently established.   Wills, an eminent English author, in his work on Circumstantial Evidence, chap. 3, sec. 6, says: "By the law of England, a voluntary and unsuspected confession is clearly sufficient to warrant a conviction, wherever there is independent proof of the corpus delicti.   According to some authorities, confession alone is a sufficient ground for conviction, even in the absence of any such independent evidence; but the contrary opinion is most in accordance with the general principles of reason and justice, the opinions of the best writers on criminal jurisprudence, and the practice of other enlightened nations.   Nor are the cases adduced in support of the doctrine in question very decisive, since in all of them there appears to have been some evidence, though slight, of confirmatory circumstances, independently of the confession."   Clark, in his work on Criminal Procedure, p. 532, lays the rule down thus: "An extra-judicial confession, in order to warrant a conviction, must be corroborated by other evidence tending to prove the corpus delicti."  Wharton, after stating the conditions upon which voluntary confessions are admissible, says:   "While voluntary confessions of specific charges or of inculpatory facts are always admissible under the conditions above stated, they can not sustain a conviction, unless there be corroborative proof of the corpus delicti."   Whart. Cr. Ev. § 632.

In 1 Greenleaf on Evidence, § 217, in discussing the question whether extra-judicial confessions, uncorroborated by any other proof of the corpus delicti, are sufficient to support a conviction, the learned author says: "In each of the English cases usually cited in favor of the sufficiency of this evidence, there was some corroborative circumstance.   In the United States the prisoner's confession, when the corpus delicti is not otherwise proved, has been held insufficient for his conviction; and this opinion certainly best accords with the humanity of the criminal code, and with the great degree of caution applied in receiving and weighing evidence of confessions in other cases, and it seems countenanced by approved writers on this branch of the law."   In People v. Badgley, 16 Wend. (N. Y.) 53, it was held: "Evidence of confession alone, unsupported by corroborating facts and circumstances, is not sufficient to convict; there must be proof aliunde of the corpus delicti, although such proof need not be conclusive."   In Stringfellow v.

State, 26 Miss. 157, it was held : " In capital felonies, the extra-judicial confessions of the prisoner, where the corpus delicti is not proven by independent testimony, are insufficient to warrant a conviction of the accused."   In Johnson v. State, 59 Ala. 37, following Matthews v. State, 55 Ala. 187, it was held : "An extra-judicial confession, not corroborated by independent evidence of the corpus delicti, will not support a conviction of a felony."   In Kentucky this principle is embodied in the statutory law of the State. Cunningham v. State, 9 Bush, 149.   This seems to be true also in Iowa.   State v. Feltes, 51 Iowa, 501.   In United States v. Mayfield, 59 Fed. 118, Boarman, J., said : " Before a conviction is justified, the government should be required to establish the corpus delicti by some degree of circumstantial or other evidence independent of the defendant's extra-judicial confessions."   In Priest v. State, 10 Neb. 394, the rule was laid down this way : " A confession is not sufficient evidence of the corpus delicti.   There must be other evidence that a crime has actually been committed, the confession being used to connect the accused with the crime."   In State v. German, 54 Mo. 527, it was held that a conviction was not warranted when there was no other proof of the corpus delicti but the uncorroborated extra-judicial confession of the accused.   And in State v. Scott, 39 Mo. 424, where the accused was tried under an indictment for robbery, and the evidence showed that he was seen riding in company with an old man, and had declared that he intended to get into a fuss with the old man and take his horse from him, and afterwards the accused was seen riding the horse, and said he got into a fuss with the old man and took his horse, it was held that the evidence was insufficient to sustain a conviction, because there was no corroborative testimony that a crime had been committed.   In Tyner v. State, 5 Humph. (24 Tenn.) 383, where the accused was convicted of horse stealing, upon evidence which showed that his conduct was such as to be strong and satisfactory proof that he had committed some crime, the consequences of which he was endeavoring to escape, and which probably related to his possession and sale of the horse — which he hastily sold for less than half its value,—it was held that the corpus delicti, or fact that the particular crime had been committed, had to be shown before any inference could be made from these circumstances that he had committed the particular crime charged.

It was held in Michigan, that, in a prosecution for an attempt to murder, the unsupported confession of the accused was not sufficient evidence of the corpus delicti.    People *v*. Lane, 49 Mich. 340.

In *Westbrook* v. *State*, 91 *Ga*. 11, a headnote case, this court itself, in passing upon the sufficiency of the evidence to sustain the verdict of guilty, said :    " There was direct evidence of the burning, and circumstantial evidence from which the jury could rightly infer that the fire was not accidental but felonious.  Thus the corpus delicti was established independently of the confession.   The evidence was ample to warrant the verdict."    This seems to be a distinct recognition of the principle that the corpus delicti must be established independently of the confession of the accused.    In the case under consideration, if the confession of the accused be eliminated, there is no evidence at all of the corpus delicti.    The mere fact that the barn was discovered to be on fire about midnight did not even tend to show that the fire was a felonious one.    Upon such proof, the law presumed the fire to have been accidental.    *Phillips* v. *State*, 29 *Ga*. 105 ; *Murray* v. *State*, supra.    Such would have been the presumption in any case upon mere proof of the burning, and the presumption applies with peculiar force to the burning of a house filled with such inflammable material as this barn contained. Surely the mere fact, testified to by one witness, that the accused seemed, from his appearance and demeanor, to be mad because he was no longer allowed to carry the keys of the barn, did not tend to show that the fire was of incendiary origin.    This evidence was on a par with that to which Judge McCay alluded in *Murray's* case, when he said : " The *looks* of the prisoner and his apparent unwillingness to talk with the witness, as mentioned by him, is evidence so liable to misconstruction as to be of hardly any weight."    The remark of the accused, the morning after the fire, that he " didn't reckon there would be any more hell raised about the keys, now," while tending, in some slight degree, to cast suspicion upon him, can hardly be said, when considered apart from his confession, to tend to establish, as a fact, that the house was feloniously burned.    If he was mad because he had been deprived of the privilege of carrying the keys of the barn, he would have been just as likely, perhaps more so, to have made this remark if the fire had been purely accidental. The fact, if it can be said to have been established as a fact, that he was heard, at some undisclosed hour of the night when the fire

occurred, rattling a chain and whistling, in the low whistle he had had since his mother died, at the door of a neighbor, who lived just across the street from him, just after that neighbor's son had come into the house to go to bed, simply tended to show that he had left the church which he had attended that night and was then almost at his own home, a quarter or a half of a mile from the barn, and no more tended to show that he had set fire to the barn than it did that this neighbor's son had done so.    If he had been on his way to set fire to the barn, he would hardly have stopped to arouse his neighbors. His statement to the jailer that he had intended to attempt to over-power him and escape from the jail was, in view of his previous con-fession, only a slight circumstance against him.    He might well de-sire to escape, not because he had really committed the crime with which he was charged, but in order to avoid the consequences of his confession.    If considered by the jury as an incriminating circum-stance, it was simply in the nature of an indirect admission of guilt, from which no inference of guilt could be drawn until the corpus de-licti was proved.    Its probative value in establishing the corpus delicti was certainly not as great as a positive confession that he had committed the identical crime charged ; and even two positive confessions of guilt, without independent proof of the corpus de-licti, would not be sufficient to authorize a conviction.    The con-versation which occurred between him and Mrs. McEachern cer-tainly had no probative value so far as proving the corpus delicti was concerned.

2.  In one of the grounds of the motion for a new trial it is alleged that the court erred in overruling a motion to rule out the testimony of the jailer, the purport of which is indicated above. There was no error in the ruling complained of.    It was competent for the State to prove what the accused stated to the jailer.    Upon the trial of a criminal case, it is always competent for the State to prove that after the alleged offense was committed the accused fled, or sought to conceal himself, or attempted, after arrest, to escape ; and certainly evidence showing an intention to escape from the custody of the law is admissible.    In *Whaley* v. *State*, 11 *Ga.* 123, it was held that evidence that the accused offered to bribe one of his guards in order to effect his escape was admissible ; and the evidence in this case of the statement made by the accused of his purpose to escape from the jail was equally so.    As the plaintiff

in error is granted a new trial, it is not necessary to consider the ground of the motion in reference to alleged newly discovered evidence. *Judgment reversed. By five Justices.*