12960.   IVEY *v.* THE STATE.

BROYLES, C. J.  The evidence relied upon to convict the accused was
wholly circumstantial, and was insufficient to exclude every reason-
able hypothesis save that of his guilt.
             *Judgment reversed.   Luke and Bloodworth, JJ., concur.*
                DECIDED DECEMBER 13, 1921.

Indictment for attempt to burn dwelling house; from Warren
superior court — Judge Shurley.   September 16, 1921.

Ivey was charged with having set fire to an unoccupied dwell-
ing house on a farm, with intent to burn it.   From the evidence
it appears that he had occupied the house as tenant of M. F.
Harrison, who rented the farm from the owner, and that about
a week after he had moved from it the fire was discovered in it,
and footprints, which witnesses testified they identified by cer-
tain peculiarities as his tracks, were found near it.   Harrison
testified, that about an hour after dark on a Thursday or Fri-
day evening he went to the yard of this house with his boys to
catch two chickens that the defendant had left there, and he
smelled fire, but he did not see any fire, and thought it might
be merely the odor of an old house, and he did not go into the
house, but on the following Saturday evening he discovered the
fire in it, where an old sack bagging · sheet was lying on the
floor partly burned, about ten or twelve feet from the fireplace;
it was burned about two and a half or three feet one way, and
perhaps fifteen inches the other way; a hole was burned through
the floor, and one of the sleepers was burned; pieces of broom
straw were found there, and it looked as if the handle of an old
broom had been laid on the bagging sheet and fired.   On cross-
examination this witness testified: " It is probable that some-
body might have been gambling in that house, and this sack
might have caught on fire from a cigarette."   It was testified,
that the tracks approached the house from the field of another
property owner and crossed a ditch into a road which passed in
front of the house at a distance of perhaps fifteen or twenty
feet, but none of the tracks were seen in the yard of the house
or going from the road to the house and back; " it was hard
ground and Bermuda grass there;" tracks " going away, run-
ning," about five or six feet apart, were discovered " just about
where the track crossed the ditch;" there had been rain a few

days before, and the tracks made a deep impression. "This tracking" was done on Sunday, and on the same day the sheriff went to the house to which the defendant had moved, three or four miles from this house, and, according to the sheriff's testimony, the defendant had on shoes when the sheriff drove his car up to the house, but was barefooted when the sheriff went into the house; the sheriff asked for his shoes and he brought to the sheriff a pair of shoes which the defendant's father-in-law, who was present, said were not the defendant's shoes, but his own. Another witness discovered under a pillow a pair of shoes which were wet, and which the defendant at first said he had not been wearing, but afterwards admitted were his shoes and had been worn by him and had made the tracks referred to; they were placed in the tracks and fitted them. It was testified that his explanation as to the tracks was that he was going past the house and saw a light in it, and thought Mr. Harrison might be there, and, as Mr. Harrison had threatened to shoot him, he turned around and ran back. Harrison testified that the defendant owed him money, and he took a part of the household furniture and all the corn, cotton, beans, and potatoes of the defendant, and the defendant still owed him, and he threatened to kill the defendant if it was not paid. The defendant, in his statement at the trial, denied that he set fire to the house; he said that he started there to get chickens he had left there, and when he got close to the house he heard a noise there and turned and ran back because he was afraid Mr. Harrison was there and would kill him, because Mr. Harrison had threatened to kill him.

The motion for a new trial was based on the usual general grounds.

The judge's order overruling the motion is as follows: "The within motion for new trial is overruled. I do this to prevent expense in another trial. The evidence, in my judgment, is barely sufficient to sustain the verdict, if sufficient, and I prefer that the Court of Appeals adjudicate the question of law, in the light of the facts, so as to prevent further trial, should a new trial be granted.

*E. P. Davis, J. Cecil Davis,* for plaintiff in error, cited: 6 *Ga. App.* 105; Id. 776; 118 *Ga.* 320; Id. 66; 111 *Ga.* 140.

*M. L. Felts, solicitor-general,* contra.