STATE OF MAINE

*vs.*

ROBERT LEVESQUE

Androscoggin.   Opinion, June 18, 1951.

*Edward Beauchamp,*
*Irving Isaacson,* for State of Maine.

*Irving Friedman,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. At the 1947 January Term of the Superior Court for Androscoggin County the respondent was indicted for arson. The indictment contained six counts but before trial it was stipulated between the State and counsel for respondent, with the respondent's permission, that respondent was to be tried only on the first count. At the 1948 November Term the respondent was tried and found guilty. During the trial respondent excepted to certain rulings of the court relating to the admission of certain evidence which exceptions were allowed. At the conclusion of the evidence, the respondent, through his counsel, moved for a directed verdict which motion was denied and exceptions allowed. After verdict and before sentence respondent moved the presiding justice that the verdict of guilty be set aside and a new trial granted. This motion was denied and respondent now brings his appeal from that ruling before the Law Court together with his bill of exceptions. For the purpose of the decision in this case we only deem it necessary to consider the appeal.

The printed case brought forward with the appeal shows that on October 6, 1946, the respondent was living with his parents at 10 Maple Street in Lewiston, Maine, in a second floor apartment of a brick dwelling house belonging to Joseph and Exilia Longtin which building or dwelling house is the one described and referred to in Count 1 of the indictment on which the respondent was tried and found guilty of the crime of arson.

The evidence for the State discloses that a captain of the Lewiston Fire Department, in response to a telephone call made at 9:34 P. M. on October 6, 1946, went with three fire trucks to 10 Maple Street and found some rubbish burning in the front part of the cellar of the brick building at that address; that there was some flame in the rubbish; that the fire was small and was extinguished with a booster tank and that the apparatus of the Fire Department was back at the

Fire Station at 9:45 P. M. and at that time the records of the Fire Department show that the fire was of undetermined origin. The Captain further testified that he was quite sure the foundation of the building was of brick; that the rubbish was not piled but strewn around and scattered and that so far as he could remember the rubbish consisted of general rubbish, mostly paper, and that he could not swear that any partitions were burned. Another witness for the State who lived in an apartment on the first floor at 10 Maple Street and who was at that address on the date in question testified that shortly before 10 P. M. on October 6, 1946, he and his wife smelled smoke and discovered it came from the cellar. They went upstairs to the apartment of the respondent's parents and the wife of the witness telephoned the Fire Department. Thereafterwards the witness and the respondent's brother went down into the cellar and he recognized the respondent standing about three to four feet away from the rubbish that was ablaze; that some old paper and rubbish were burning and that the brother carried the respondent upstairs to the first floor in his arms. Witness further testified that after the fire was put out by the Fire Department he went downstairs and looked around and found "just old scrap paper, that is all." He also testified that the cellar was divided by wooden partitions that ran from the floor to the ceiling; that he did not discover that any of the boards making up the partitions were burned. Another witness, a member of the Lewiston Police Force, testified that he arrived at the scene a few seconds after the Fire Department; that he went down cellar, saw a little smoke, that a fire was being put out by a booster line; that the cellar was divided into eight compartments; that outside the compartments there was space to walk through; that he did not remember what part of the cellar the fire was in except that it was more towards the front of the building; that he made no investigation of the area burned in the cellar. Two other witnesses for the State, Police Of-

ficers of the City of Lewiston, testified that on October 6, 1946, at about 9:45 P. M., in response to a call concerning a disturbance, they drove to St. Mary's Rectory and saw the respondent sitting on the steps of the Rectory; that he was intoxicated; that he staggered; that his speech was incoherent; that he smelled strongly of beer and that he stated that he had just started a fire in the cellar of his house at 10 Maple Street; that respondent was taken in the police car to the station and booked for intoxication and that during the ride to the Police Station respondent seemed to have what the officers termed a "crying jag" and mumbled to himself. The next day, October 7, 1946, the respondent was interviewed by a Captain of the Lewiston Police Department in the presence of another police officer and at that time the respondent was advised of his rights and he stated that he had set the fire at 10 Maple Street; that he went to the cellar where he picked up a piece of cardboard and lit it with a match and placed the burning cardboard against a wooden partition and stayed there until the wood started to burn. The witness further testified that after he got the story from the respondent he transcribed it into the form of a statement and he identified the statement that he had made up following his conversation with the respondent; that he made it up the same morning he interviewed the respondent and that he read the statement to the respondent and that after certain corrections were made the statement was signed by the respondent. The statement, in the nature of a confession, as corrected was offered and duly admitted in evidence by the court without objection and read to the jury. Another witness for the State, an officer of the Lewiston Police Department, testified that he was present at all times when the respondent was interviewed by the captain.

In the view we take of the case it seems unnecessary to further detail or outline the other evidence. The question presented for determination is whether, upon all the evi-

dence, the jury was warranted in finding beyond a reasonable doubt that the respondent was guilty of the crime of arson as charged in the first count of the indictment. Our court said in *State of Maine* v. *Caliendo,* 136 Me. 169, 174, 4 A. (2nd) 837, with respect to the crime of arson:

> "Arson is and always has been regarded as one of the most serious offenses known to the criminal law. It is a crime which is rarely committed in the open and in the presence of witnesses, is usually most difficult to prove, and often can only be established by circumstantial evidence. The State is bound to prove all the elements of the crime beyond a reasonable doubt. If it relies solely on circumstantial evidence to establish the guilt of the accused, as in all other felonies, it must prove each and every circumstance upon which a conviction must rest beyond a reasonable doubt, and the evidence must be sufficient to exclude beyond a reasonable doubt every other reasonable hypothesis except that of the respondent's guilt. *State* v. *Richards,* 85 Me., 252, 255, 27 A., 122; *State* v. *Terrio,* 98 Me. 17, 56 A., 217; *State* v. *Cloutier,* 134 Me., 269, 186 A. 604."

It should be noted from the above quotation that it is the law of our State that all the elements of the crime of arson must be proved beyond a reasonable doubt. Our court, in *State of Maine* v. *Caliendo, supra,* said referring to that particular case:

> "In this case, the corpus delicti of the arson is clearly established."

and further said:

> "- - - - - It is not necessary, to constitute arson, that any of the building should be consumed. If any part, however small, be ignited, the offense is committed. *State* v. *Taylor,* 45 Me. 322. - - - - - - - - -"

> "- - - - - - - mere suspicion, however strong, will not supply the place of evidence and warrant a conviction."

The authoritative textbook writers and many courts have defined the term "corpus delicti" and in the case of arson have stated that it is made up of two elements, the one, the burning, the other, that some one is criminally responsible for the result. The following language appears in 7 Ruling Case Law, 774:

"The corpus delicti in arson is not merely the burning of a house, but that it was burned by the wilful act of some person criminally responsible for his acts, and not by natural and accidental causes, - - - - -."

"2. Necessity for Proof of Corpus Delicti.— Proof of a charge, in criminal causes, involves the proof of two distinct propositions: first, that the act itself was done, and secondly, that it was done by the person charged, and by none other—in other words, proof of the corpus delicti and of the identity of the prisoner. Hence before there can be a lawful conviction of a crime, the corpus delicti—that is, that the crime charged has been committed by some one—must be proved." See Bines v. State, 118 Ga. 320, 45 S. E. 376, 68 L.R.A. 33. "Unless such a fact exists, there is nothing to investigate. Until it is proved, inquiry has no point upon which it can concentrate; indeed, there is nothing to inquire about. Accordingly a defendant is not required in any case to answer the charge against him, in the absence of evidence upon the part of the prosecution sufficient to establish the corpus delicti; and if the prosecution fails to establish the corpus delicti the verdict will be set aside and a new trial ordered. The first statement of the necessity of proving the corpus delicti and the insistance of its requirement appears to be that of Lord Hale (2 Hale P. C. 290) where he says: 'I would never convict any person for stealing the goods cujusdam ignoti merely because he would not give an account of how he came by them, unless there were due proof made that a felony was committed of these goods.'" See note 68

L.R.A. 33 and 45 where many cases are collected and annotated.

Our court has many times defined the words "reasonable doubt" and in *State* v. *Rounds,* 76 Me. 123, 125, approved the following language used in *State* v. *Reed,* 62 Me. 129, 144, as being a correct definition of reasonable doubt:

> "It is a doubt which a reasonable man of sound judgment, without bias, prejudice or interest, after calmly, conscientiously and deliberately weighing all the testimony, would entertain as to the guilt of the prisoner."

In *State* v. *Brown,* 103 S. C. 437, 88 S. E. 21, L. R. A. 1916 D. 1295, which was an arson case, the court said:

> "So, in a case of arson the corpus delicti consists of two elements, the burned house and the criminal act of another in causing the burning. If there is no evidence of either, the defendant is entitled to an acquittal, and he is entitled to an acquittal as a matter of law."

In the same case the court, in speaking of certain statements made by the accused showing enmity, which statements would have a tendency to prove motive, said:

> "Until there is some evidence of the corpus delicti, even confessions made out of court are not admissible." Citing 7 Am. & Eng. Enc. Law, p. 863, note.

> "Before a defendant can be required to go into his defense it is necessary that there shall be some proof of the corpus delicti. If there is no evidence to prove the corpus delicti, the defendant is entitled to a verdict of not guilty."

In addition to the testimony of the State's witnesses, introduced, it is assumed, to establish the *corpus delicti,* the State, as we have before stated, introduced, without objection, the extra judicial statement of the respondent in the nature of a confession made to the police officers to bolster up the evidence of the State's witnesses.

The weight of authority in this country, at least, appears to be from the decided cases that the *corpus delicti* cannot be established by the extra judicial confession of the respondent unsupported by other evidence. *State* v. *Brown, supra; Bines* v. *The State, supra.* In 1 *Greenleaf on Evidence,* Sec. 217, the author states:

> "In the United States, the prisoner's confession *when the corpus delicti is not otherwise proved* has been held insufficient for his conviction; and this opinion certainly best accords with the humanity of the criminal code, and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases; and it appears countenanced by approved writers on this branch of the law."

In *Priest* v. *State,* 10 Neb. 393, 399 (1880), the court said in speaking of confessions and *corpus delicti:*

> "- - - - - Nor is there sufficient evidence of the *corpus delicti.* That a crime has actually been committed must necessarily be the foundation of every criminal prosecution, and this must be proved by other testimony than a confession, the confession being allowed for the purpose of connecting the accused with the offense."

> "A party cannot be convicted of a felony upon a mere suspicion. The law wisely requires the testimony to exclude all reasonable doubt, and while to a great extent the weight of testimony and degree of credibility to be given to the witnesses must be left to the jury, the court, where the verdict is unsupported by evidence, or is clearly wrong, will set it aside and grant a new trial."

In the case of *State of Maine* v. *Peterson,* 145 Me. 279, 75 A. (2nd) 368, 371, we said with respect to the admission of a similar extra judicial statement or confession where other admissions by the respondent had been made as in the instant case:

"- - - - -, its" (the statement) "probative value, when weighed - - - - - with reference to the other evidence in the case, is not sufficient to establish his guilt beyond a reasonable doubt. The issue in that regard arises on the motion, and the appeal from its denial. The State's case must be held to rest entirely on the statement. If it is not adequate, in and of itself, the admissions already alluded to, made by the respondent while he was being transported to jail, offer no fortification of it.

"The probative value of any statement of the kind must be measured by the intelligence of the person signing it, and the accuracy of the recitals it carries with established facts."

Applying the principles which we have herein enunciated to the instant case, we feel that the State has not sustained the burden of establishing the respondent's guilt beyond a reasonable doubt. There is no definite or even circumstantial proof that any portion of the building was burned in the slightest degree or even ignited which is necessary to establish the *corpus delicti*. The only significance in the State's evidence is the placing of the respondent near the burning pile of paper or rubbish. That creates some suspicion, but as we have heretofore pointed out in this opinion, mere suspicion without due proof of the *corpus delicti* or the crime charged will not take the place of evidence. On the record here presented the State has not overcome the presumption of innocence which clothed the respondent. The mandate will be

*Appeal sustained.*

*Verdict set aside.*

*New trial granted.*