## JORDAN *v.* THE STATE.

1. An instruction is not erroneous which defines a reasonable doubt as one arising out of the case, either from the want, weakness, insufficiency, or conflict in testimony, and which leaves the mind of an honest juror wavering and in doubt as to the guilt of the accused,—a doubt which is not a mere conjecture, but one for which the jury can assign a reason, from having heard the whole case.

2. Having charged as to the weight which might be given to the prisoner's statement, it was not necessary, in defining a reasonable doubt, for the judge further to say that it might arise from the defendant's statement.

3. In connection with a charge on the credibility of witnesses, an instruction that the jury *should* observe their demeanor and conduct in the delivery of their testimony, and take into consideration, if such appears from the testimony, the relationship, bias, or prejudice of any witness, is not ground for a new trial because the court used the word "should" instead of "may."

4. A charge on the subject of character, that "It is contended that evidence has been introduced that shows the defendant to be a man of good character. I charge you that evidence of good character may be taken into consideration by you not only in passing upon the guilt or innocence of the defendant, but also as to whether or not such character may of itself be sufficient to generate a doubt in the mind of the jury as to the guilt of the accused," is not open to the criticism that the prefatory statement, that it was contended that evidence as to good character had been introduced, tended to impair and destroy the force and value of the evidence relating to the good character of the defendant.

5. The court having fully and accurately instructed the jury on the law touching the prisoner's statement, a charge that the jury get the facts from the witness stand, and from no other source, when considered in its context, did not restrict the jury to the testimony and eliminate from their consideration the prisoner's statement, in reaching a verdict.

Argued March 16,—Decided March 27, 1908.

Indictment for murder. Before Judge Rawlings. Washington superior court. December 12, 1907.

*Hardwick, Wright & Hyman,* for plaintiff in error.

*John C. Hart, attorney-general, Alfred Herrington, solicitor-general,* and *Hines & Jordan,* contra.

EVANS, P. J. Zack Jordan was convicted of the murder of Albert Brown, with a recommendation of life imprisonment. The court refused a new trial, and he excepts.

1, 2. Several of his grounds relate to the court's instruction on reasonable doubt,—complaining that the definition of a reasonable doubt was inaccurate, and especially erroneous because the court omitted to inform the jury that a reasonable doubt might arise from the prisoner's statement. The court charged the jury on the weight which might be given to the prisoner's statement. The court's definition of a reasonable doubt is substantially given in the syllabus, and is not erroneous because he characterized such a doubt as one for which a reason can be assigned. *Vann* v. *State,* 83 *Ga.* 45 (9 S. E. 945); *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100). Nor was it error to fail to charge, in immediate connection with such definition, that a reasonable doubt may arise from the prisoner's statement. *Walker* v. *State,* 118 *Ga.* 34 (44 S. E. 850).

3. The credibility of a witness is a matter to be determined by the jury, under proper instructions from the court. Penal Code, §1028. The manner and conduct of a witness while delivering his testimony, his bias, hostility, or relationship, if shown to exist, are legitimate matters for consideration by the jury in deciding what credit should be given to his testimony, and the court may so instruct the jury. The criticism that the judge, in his instruction on this subject, ought to have said that the jury *may,* instead of *should* take these matters into consideration, savors more of verbal nicety in expression than of substantial error of law.

4. The court delivered the charge as to good character which appears in the syllabus. The criticism is unmerited. The prefa-

tory remark of the court was not calculated to reflect on the defendant's evidence as to his good character, and we are satisfied no such inference was made by the jury.

5. After instructing the jury on the law applicable to the case and defining the issues, the court used this language: "All of these are questions of fact for you to determine, gentlemen, under the evidence as you understood it and the law as I have given it to you in charge. After having given you the law in charge, you become the judges of the law and the facts in the case. You receive the law from the court, and you can get it from no other source. You get the facts from the witness stand, and you can get them from no other source, and it is for you to determine what the truth of the transaction is." Exception is taken to this clause of the foregoing charge: "You get the facts from the witness stand, and you can get them from no other source," and the error assigned is that it restricted the jury to the sworn testimony and eliminated the prisoner's statement from their consideration. It was decided in *Vaughn's* case, 88 *Ga.* 731 (16 S. E. 64), that "the general tenor of the charge of the court on the trial of a criminal case should be shaped by the evidence alone, and the law applicable thereto, adding, or at some stage of the charge incorporating, the statutory provisions touching the prisoner's statement, and, in case of special request to charge on the statement, granting such request if the matter requested be appropriate." This ruling has been followed and approved in several cases. *Hays* v. *State,* 114 *Ga.* 25 (40 S. E. 13), and cases cited. In the case at bar the court gave the statutory instruction relative to the prisoner's statement, and in that connection also charged the jury, "Look to the statement, consider it, and if you believe the statement is true, and under the statement you believe the defendant is not guilty, you have a right to act upon the statement of the defendant, even in preference to the sworn testimony in the case." In the case of *Coney* v. *State,* 90 *Ga.* 140 (15 S. E. 746), it was held that where the court gave a proper charge touching the prisoner's statement, it was not error to instruct the jury that it was for them to determine from the evidence whether or not the homicide was unlawful, nor was it error to charge: "Now, as to what is the truth of the case, you are the judges; you are to decide from the testimony; you look to all of the circumstances of the case; look to the testi-

mony of the witnesses. . . If you believe from the testimony that the prisoner is guilty of the offense of murder, your verdict will be, 'We, the jury, find the defendant guilty.' " The instruction complained of in the present case, while perhaps more emphatic, was not more restrictive than in the *Coney* case. The jury in all criminal cases are sworn to try the issue, "and a true verdict give according to the evidence." Penal Code, §979. In this State the prisoner is not allowed to testify, but may state, without being sworn, any relevant matters in his own behalf. The jury are allowed to give the prisoner's statement such force as they think it entitled to. When considered in connection with its context, the instruction complained of is only tantamount to a charge that the defendant's guilt must be made to appear from the evidence. If the jury desired to reject all of the evidence or a part of the evidence because of its conflict with the defendant's statement, they were instructed that they had the power to do this.

Moreover, the charge of the court was that they should get the facts from the witness stand. In the trial of criminal cases it is the universal practice for the defendant to deliver his statement from the witness stand,—that is, the place occupied by the witnesses who testify in the case. We do not think the language of the court could have been understood by the jury to have the effect of eliminating any consideration of the prisoner's statement, but rather as an admonition that they must not go outside of what transpired at the trial, in determining the guilt or innocence of the accused.

An examination of the record discloses no error of law, and as the evidence warranted the verdict, the judgment is

*Affirmed. All the Justices concur.*