## McCRACKIN *et al. v.* THE STATE.

1. Error is assigned on the refusal of a written request to charge the following: "I charge you, gentlemen of the jury, that if in this case you believe that the defendants believed that the deceased was the man who had shot at the sheriff, and if they believed in so doing that he had committed the offense of a felony, or if you find that from the evidence that said act of shooting was a felony, and that the defendants in good faith believed that the man upon the bridge was undertaking to escape, then they would have the right to arrest him, and the fact that it developed that the person they were actually undertaking to arrest was not the person that they thought they were arresting would make no difference, provided, as I have stated, they believed that. the deceased was the negro for whom they were searching, and for whom a warrant had .been issued, as is contended by them, and that they acted in good faith upon this belief." In the light of the entire charge this refusal was not error. Moreover, this was not a correct statement of the law, because it omitted the important principle that the defendants, in order to justify themselves, must have had reasonable grounds of suspicion that the deceased was the escaping felon, and that they had made reasonable effort to determine such fact; and because the evidence failed to authorize the charge.

2. Under rule 5 of the superior courts (Civil Code, § 6264), the court is not obliged to grant the additional time requested, but "may grant such extension of time as may seem reasonable and proper." *Wilburn* v. *State,* 141 *Ga.* 510. Under the facts stated in the motion, considered in connection with the note of the trial judge, the refusal to grant the full time requested by counsel for the accused was not error.

3. The other assignments of error show no cause for the grant of a new trial, and are not of such character as to require special mention. The verdict was supported by evidence.

No. 1919. DECEMBER 15, 1920.

Indictment for murder.        Before Judge Thomas.        Colquitt superior court.        January 23, 1920.

*James Humphreys* and *E. E. Cox,* for plaintiff in error.

*Clifford Walker, attorney-general, C. E. Hay, solicitor-general, M. C. Bennet,* and *W. A. Covington,* contra.

GILBERT, J. 1. The defendants, McCrackin and Radney, were convicted of the murder of Jones. Grounds 21 to 31, inclusive, of the motion for new trial relate to written requests to charge, which were refused. These requests include instructions in regard to when a private person may arrest an offender; the law in regard to killing in a case of mistaken identity where the defendant acts in good faith; the right of a private citizen to arrest where he has reasonable and probable grounds to suspect that the

person is escaping or attempting to escape; the right of a private citizen, acting as a member of a local posse organized by an arresting officer to apprehend one who has committed a felony where such private citizen is a resident in some other county; the right of such private citizen to defend himself against an attack by the person whom he undertook to arrest under the circumstances detailed above; that an apparent necessity acted upon in good faith is equivalent to a real necessity; that an arresting officer is bound to execute penal warrants placed in his hands, and to that end may summon to his assistance any citizen of the neighborhood; that if a crime is committed in the presence of the officer and he has no warrant, it is his duty to make an arrest of the offender, and he has a right to summon citizens of the neighborhood, and the acts of citizens shall be subject to the same protection and consequences as official acts; that a private citizen has as much right to arrest a fugitive felon, where the emergency calls for immediate action, as a public officer, and while so doing has equal protection of the law; that as a rule a person authorized to make an arrest can use as much force as is necessary under the circumstances to make an arrest, and no more; and that if a person authorized to make an arrest is resisted in his attempt to make a lawful arrest, he has the right to use such force as may be necessary to compel submission and accomplish the arrest, and is not bound to wait until he is actually assaulted before resorting to force, but if it is apparent that the person he is seeking to arrest intends and is able to resist with violence, the person making the arrest may use such force as he may reasonably consider necessary to compel surrender. It is obvious that the applicability of all of these principles of law requested to be given in charge by the defendants depends upon whether or not the court properly refused the written request to charge the following, which refusal is excepted to in the twenty-second ground of the motion for a new trial: "I charge you, gentlemen of the jury, that if in this case you believe that the defendants believed that the deceased was the man who had shot at the sheriff, and if they believed in so doing that he had committed the offense of a felony, or if you find that from the evidence that said act of shooting was a felony, and that the defendants in good faith believed that the man upon the bridge was undertaking to escape, then they would have the right

to arrest him, and the fact that it developed that the person that
they were actually undertaking to arrest was not the person that
they thought they were arresting would make no difference, pro-
vided, as I have stated, they believed that the deceased was the
negro for whom they were searching, and for whom a warrant
had been issued, as is contended by them, and that they acted
in good faith upon this belief." It is insisted that this instruction
was legal and pertinent for the reason that the defendants killed
Jones under the honest belief that the deceased, a white man, was
Sam Brown, a negro, whom they as part of the sheriff's posse
were undertaking to arrest, believing Brown guilty of a felony
and that he was endeavoring to escape. The court instructed the
jury, among other things, as follows: "If you believe from the
evidence in this case that the deceased was manifestly intending
or endeavoring, by violence or surprise, to commit a felony upon
the defendants, and the defendants killed him, it would be justi-
fiable. On the other hand, the court instructs you that a person
can not create an emergency which renders it necessary for
another to defend himself, and then take advantage of the effort
of such person to defend himself in the face of such emergency
so created, and justify the taking of the life of such person. . .
The court instructs you further, in this same connection, that for
the defendants, or either of them, simply to have called to the
deceased to halt, and without more, would not justify the de-
ceased in committing a felony upon the defendants and deprive
them of defending against the same; but you look to all the facts
and circumstances of the case and the statement of the de-
fendants, as to what was the truth of the case with respect
to the issues in the case, and under the rules of the law which
I have already given you in charge." In view of this
concrete statement of the law applicable to the defense set up by
the defendants, which was more favorable to the defendants than
the law entitled them to, it was not cause for a new trial that the
court failed to comply with the request to charge, mentioned
above, made by counsel for the defendants, in respect of the
right of officers and of private individuals to arrest a perpetrator
of a crime who was attempting to escape, even if the request
stated correct principles of law on that subject. Moreover, the
request was not an accurate statement of the law, in that it

omitted the important principle that the defendants must, in order to justify themselves, have reasonable grounds of suspicion that the deceased was the escaping felon, and that they made reasonable effort to determine that fact. Furthermore the requests were not applicable under the facts of the case. It appears that Sam Brown had been reported to be disorderly on a public highway. The sheriff of the county was informed that a warrant had been issued by a justice of the peace for the arrest of Sam Brown on a charge of being drunk on a public highway. The sheriff, on this information, but without having the warrant himself, undertook to arrest Brown, who fired a gun at him and fled. News of these facts rapidly spread in the neighborhood, and a number of citizens, among them McCrackin and Radney, appeared to render assistance to the sheriff in apprehending Brown. The sheriff stated to McCrackin and Radney that he was sick, had no cartridges, and was going home. According to the defendants the sheriff said, "Let's all go home and put up our guns." According to the sheriff he said, "I told all of them to put up their guns and go to bed. I did not tell any of them to go out there and guard the bridge and hold up people on the highway. I insisted that they go home." The defendants decided to go in search of others of the party, including one Marion Holland, to inform them of the sheriff's decision. Upon meeting Holland the latter suggested guarding two bridges over Ochlochnee river near by, in order to capture the negro. The defendants, neither of whom knew the negro, took with them David Knott, who did know the negro, and undertook to guard one of the bridges. The moon was shining. McCrackin and Knott were seated on one side of the approach to the bridge, and Radney sat opposite them. Within a few moments approaching footsteps were heard. McCrackin raised up, and, seeing a man, said "Halt," or "Hold up." At this point there is a conflict as to who began the shooting. The defendants, in their statements, say the deceased, on being halted, immediately began to shoot. The State's evidence authorizes the finding that the defendants began the shooting. Without conflict, the evidence shows that Henry Jones, the deceased, was returning to his home from that of a neighbor; that he had committed no offense, nor was he suspected of having done so. He was halted in the darkness of night at the bridge and shot to death by the

defendants, who seek to justify the killing on the ground that they were undertaking to arrest the negro Brown, for the reasons above stated; that they in good faith believed that the deceased was the negro who shot at the sheriff; that the negro had committed a felony; that he was undertaking to escape; that a warrant had been issued; that they were acting under the suggestion of Holland, who had previously been assisting the sheriff in endeavoring to make the arrest; that, thus acting in good faith, the justification would be the same as if the person killed had actually been Sam Brown, for whom they were searching.  As has been frequently said, the law is very jealous of the liberty of the citizen.  On the other hand, some latitude is allowed to peace officers in making arrests of persons who have violated penal statutes, because it is essential to protection of person and property.  The right of the private citizen to make arrests is more limited than that of peace officers, because the latter are charged by law with that duty and are subjected to penalties for failure thereof.  The defendants, under the facts of the case, were not entitled to be regarded as peace officers, because, by the undisputed evidence, the sheriff was neither actually nor constructively present at the time of the homicide.  Furthermore he had ordered these defendants to go home and put up their guns, announcing that he had given up the effort to make the arrest that day; and finally, because at the time of the killing the defendants did not disclose their identity, nor any lawful authority to make the arrest (*Franklin* v. *Amerson,* 118 *Ga.* 860, 45 S. E. 698; *Graham* v. *State,* 143 *Ga.* 440, 445, 85 S. E. 328, Ann. Cas. 1917A, 595; 5 C. J. 393, § 17), nor their purpose in halting the deceased; nor did they undertake to ascertain the identity of the deceased.  "A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion."  It is admitted that they did not know Sam Brown, the negro for whom they were searching, and for that reason had carried with them one David Knott, who could identify Brown.  Indeed, it appears that the defendants, without knowledge as to the identity of the deceased and without an effort to learn his identity (un-

less their order to him to halt was sufficient effort), without disclosing their own identity or purpose, in the night ordered the deceased to halt; whereupon the shooting began, resulting in the death of Henry Jones. The burden was upon the defendants to show that they acted upon reasonable and probable grounds of · suspicion. *O'Connor* v. *State*, 64 *Ga.* 125, 127 (37 Am. R. 58). See Hawkins v. Commonwealth, 53 Ky. 395 (61 Am. D. 147, and notes) ; 2 R. C. L. 449, § 7; 5 C. J. 394, § 22. There is nothing in the evidence or the statements of the defendants to show reasonable and probable grounds of suspicion that the person killed was in fact the person they were seeking as an escaping felon. The defendants were under the duty to make reasonable efforts to ascertain whether or not the deceased was the escaping felon. 2 R. C. L. 450, § 6. In this they wholly failed.

2, 3. The second·and third headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur, Atkinson, J., specially.*