## ROBINSON *et al.* v. THE STATE.

1. An answer which does not state a conclusion should not be ruled out on the ground that the question, to which such answer was a reply, sought to elicit a mere conclusion.

2. Where a question sought to elicit and the answer stated a conclusion of the witness, for which reason both were objectionable, the admission of such evidence does not require the grant of a new trial, where the witness stated the facts upon which the conclusion was based.

3. The court did not err in admitting the alleged statements of one of the defendants, set out in the third division of the opinion, on the ground that it was not shown that they referred to the deceased; it being a question for the jury whether they referred to the deceased.

4. The court did not err in giving to the jury the instructions set out in the fourth division of the opinion.

5. The court did not err in using the word, "will," instead of the word, "may," in giving in charge the principle laid down in the Civil Code (1910), § 5732.

6. The court did not err in failing to charge the jury, in connection with his charge upon the law of alibi, that if they believed that the defendants, or either of them, had established his or their alibi to the reasonable satisfaction of the jury, they should acquit the defendant or defendants so establishing his or their alibi; the court having charged the law of alibi as a defense, and it being incumbent on the defendants, if they wished the above instruction, to have specifically requested it.

7. The court did not err in refusing to grant to counsel for defendant additional time for argument before the jury.

8. The court did not err in failing to give in charge to the jury the instruction set out in the eighth division of the opinion, this instruction being substantially covered by the charge as given.

9. The court did not err in failing to give in charge to the jury the instruction referred to in the ninth division of the opinion, because such instruction, if correct, was not applicable under the facts.

10. The alleged newly discovered evidence does not require the grant of a new trial.

11. The verdict is supported by the evidence.

No. 4173. APRIL 17, 1924.

Murder. Before Judge Tarver. Murray superior court. December 29, 1923.

*Porter & Mebane* and *C. N. King,* for plaintiffs in error.

*George M. Napier, attorney-general, Joseph M. Lang, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HINES, J. John W. Walker and Leonard Robinson were jointly indicted and tried for the murder of J. B. Brackett. The jury found them guilty. They moved for a new trial, which was refused. To this judgment they excepted and brought the case to this court.

1. The wife of the deceased positively identified the defendant Walker as the person who shot and killed her husband. The defendants contended that they were not the perpetrators of the murder, and attempted to establish an alibi. Tom Parker was sworn as a witness for the defendants; and upon his cross-examination the solicitor-general propounded the following question, and the witness made the following answer: "Q. She described this

negro, except the gold teeth? A. She said he was a black negro." Counsel for the defendants moved the court to rule out said question and answer, on the ground that the question called for a conclusion. The court overruled this motion. An answer which does not state a conclusion should not be ruled out on the ground that the question which elicited it sought to elicit a mere conclusion. Certainly the refusal of the court to exclude such answer on this ground was not an error requiring the grant of a new trial.

2. John Pritchett was sworn as a witness for the defendants, and on his cross-examination the solicitor-general propounded the following question and elicited the following answer, to wit: "Q. In every other respect, except that the negro had gold teeth, the description she gave fits the negro? A. I think he fits it pretty well." This witness was introduced for the purpose of impeaching the wife of the deceased, who had testified in behalf of the State, by showing that she had given a description of the defendant, Walker, in her testimony before the coroner's jury, the day after the homicide, different from what she gave on the trial of the present case. This witness repeated the description of the accused which the wife gave before the coroner's jury. While the question sought to elicit, and the answer thereto stated, a conclusion of the witness, and for this reason was objectionable, the admission of this evidence does not require the grant of a new trial; the witness having stated, in connection with this answer, the description which the witness whom it was sought to impeach gave in her testimony before the coroner's jury.

3. The court overruled the objection of counsel for the defendants, and permitted a witness for the State to testify as follows: "I never saw this negro, John Walker, until he was brought to jail. I cannot tell you how long he has been here in jail. I have heard him praying in the jail, saying his prayers there in the night. I heard him praying, saying they had him accused of killing a white man. He has talked in his sleep several times. Me and Ben Brackett talked about it. He was praying when talking about being accused of killing a white man. I never heard him say any white man had made him kill that white man. He said something about killing a man, in his prayers. He went like he said he had killed a white man, but would not say for sure he said that. Me and Jim Fox listened to him one night, to see what he said. I told

4

you that Ben Brackett and I had heard the negro in his prayer saying something like he had killed the white man. I told Ben Brackett I thought he was guilty, that he had said something about killing a white man. I know Ben Brackett. I have talked with him about this. I told Ben Brackett the way it went to me, I heard this negro say in his prayer that he killed a white man. Ben was talking to me about it. I would not tell a lie on the negro. I heard the negro say something like that. I think that is what I heard him say, something like that. In his prayer the defendant, John Walker, didn't say a white man made him kill him. He was praying, and he talks fine. You can't understand him really good. Me and John Fox got up against the bars and listened to him. Never talked face to face with him, except across the jail. I asked him why he killed this man, and he could not tell me. Said he never killed him, when I asked him about it. I did not tell him what I heard him say in his prayer. Me and John Fox were eavesdropping. John was over there in jail at that time. They have me accused of having too many wives. Whenever I eavesdropped, and what he said in his prayers, he never did give any names." Counsel for the defendants moved to rule out all of this testimony, on the ground that it "did not show that such prayers or statements referred to the deceased, or connected the defendant with the homicide," and for this reason was irrelevant. The objection to the admission of this evidence was without merit, it being a question for determination by the jury whether it referred to the deceased or connected the defendant, Walker, with the homicide. *Somers* v. *State*, 116 *Ga.* 535 (4) (42 S. E. 779).

4. The defendants allege that the court erred in charging the jury as follows: "If you find the defendant John W. Walker committed the offense of murder, as charged in the indictment, and that his codefendant, Leonard Robinson, was present at the time and place of the commission of the alleged offense, aiding and abetting the defendant Walker in the commission of his crime, and participating in his criminal intent to unlawfully kill J. B. Brackett, then the defendant Leonard Robinson would likewise be guilty of the offense of murder, and it would be your duty to convict him;" and in not charging in connection therewith or anywhere that, "even though Leonard Robinson was present at the time and place of the commission of the alleged offense of murder, and even though

the jury might find that John Walker was guilty of the crime of murder, still it would be the duty of the jury to acquit the defendant Leonard Robinson, even though present, unless the evidence did show that Leonard Robinson participated in the criminal intent of John Walker, and aided and abetted John Walker in the killing of J. B. Brackett." The ground of exception to this instruction is without merit. The instruction as given aptly, clearly, and fully covered the principle of law applicable upon this subject.

The defendants further allege that the court erred in charging the jury as follows: "If you find the defendant John Walker committed the offense charged in the indictment, but that his codefendant, Leonard Robinson, was not present, aiding and abetting him in the commission of his unlawful act, and participating in his criminal intent, the defendant Walker could be convicted; but under these circumstances, if they be true, which is a question entirely for your determination, the defendant Leonard Robinson should be acquitted," without charging in connection therewith or elsewhere that even though Walker committed the offense as charged in the indictment, and even though the defendant Robinson was present at the time and place of the commission of the offense by Walker, the defendant Robinson could not be convicted unless he was, in addition to being present, aiding and abetting Walker and participating in his criminal intent to unlawfully kill J. B. Brackett." The exception to this charge is not well taken. The instruction set out in the preceding paragraph specifically embraced the principle which the defendants contend should have been given in connection with the instruction to which they except.

5. The defendants allege that the court erred in charging the jury as follows: "In determining what weight you will attach to the testimony of any witness, you will look to his or her appearance on the stand, take into consideration their manner of testifying, their interest or want of interest in the case, their feeling, prejudice or bias, if anything of the sort has been made to appear, together with their opportunity of knowing the facts about which they testify, and their inducement, if any, to swear falsely." The error assigned is that the court used the word "will," instead of the word "may," in this instruction, and that the effect was to instruct the jury that it was imperative upon them to consider the matters specified in said instruction in determining the weight to be given

the testimony of witnesses. While section 5732 of the Civil Code which lays down the rule for determining where the preponderance of the evidence lies, uses the word "may," the use by the trial judge of the word "will," if erroneous, was not such error as requires the grant of a new trial. In *Jordan* v. *State,* 130 *Ga.* 406 (60 S. E. 1063), it was held that the use of the word "should," instead of "may," was not ground for the grant of a new trial. That case, in principle, applies to this case. In *Central Ry. Co.* v. *Brown,* 138 *Ga.* 107, 113 (74 S. E. 839), the court was dealing with an instruction upon the diminution of damages due to the contributory negligence of the plaintiff, under the Civil Code (1910), § 2783. In that case this court properly held that substitution of "may" for "shall," in an instruction intended to embody the principle laid down in that section, was inaccurate.

6. The defendants complain that the trial judge erred in that, in connection with his charge on the law of alibi, he did not instruct the jury that if they believed that the defendants, or either of them, had established his or their alibi to the reasonable satisfaction of the jury, they should acquit the defendant or defendants so establishing his or their alibi. This contention is without merit, the court having charged generally the law applicable to the defense of alibi; and if the defendants wished more specific instructions on this subject, they should have specially requested them.

7. The defendants complain that the court refused and denied their counsel an extension of time for their arguments to the jury, and limited them to two hours in arguing the case for both defendants to the jury. Before the arguments were begun, their counsel asked for an extension of time to three hours, stating to the court that they felt two hours to be insufficient time. The court refused to grant said extension. In a note to this ground of the motion for new trial the court states that counsel for the defendants did not consume two hours in their argument to the jury. "Under rule 5 of the superior courts (Civil Code, § 6264), the court is not obliged to grant the additional time requested, but 'may grant such extension of time as may seem reasonable and proper.' *Wilburn* v. *State,* 141 *Ga.* 510. Under the facts stated in the motion, considered in connection with the note of the trial judge, the refusal to grant the full time requested by counsel for the accused was not error." *McCrackin* v. *State,* 150 *Ga.* 718 (105 S. E. 487). "The

two defendants having elected to be tried together, their counsel were entitled to only one hour for the argument of their side of the case, and the grant of any further time was entirely within the discretion of the trial judge." *Curry* v. *State*, 17 *Ga. App.* 377 (6) (87 S. E. 685). The refusal of the court to grant an extension of time was not error, because counsel did not state in their places or on oath that they could not do the case justice within the time allotted, and that it would require for that purpose additional time; and especially is this so when counsel concluded their arguments before the jury within less than two hours.

8. The defendants assert that "the court erred in failing to charge the jury that presence and participation in the act of killing a human being is not evidence of consent and concurrence in the perpetration of the act, by a defendant charged with aiding and abetting in the killing, unless he had a felonious design, or participated in the felonious design of the person killing." The charge as given to the jury substantially covered the principle which counsel for the defendants contend should have been charged; and for this reason, in the absence of a timely request, the failure of the court to instruct the jury as urged was not erroneous.

9. Robinson contends that the court erred, as to him, in failing to charge the jury that if Walker committed an assault upon the deceased with a deadly weapon, but his intention to assault the deceased was unknown to Robinson, and if Robinson intended to participate in an assault and battery only, and did not design to kill, then Robinson would be guilty of manslaughter only. The principle which the defendants insist should have been given to the jury, if a correct one, was not applicable under the facts of this case. There is no evidence that Robinson intended only to participate in an assault and battery. The assault made by his codefendant was a felonious assault with a shotgun, and the act done was a felonious homicide by shooting with the gun. *Futch* v. *State*, 137 *Ga.* 75, 79 (72 S. E. 911). The decision cited discussed and differentiated *Brown* v. *State*, 28 *Ga.* 199. Under the evidence, Robinson either participated in a felonious homicide or was not guilty at all.

10. The alleged newly discovered evidence does not require the grant of a new trial; and counsel for the defendants in their briefs frankly admit that it alone is not sufficient for such purpose.

11.   Counsel for the defendants earnestly insist that there is no evidence to authorize the conviction of Robinson.   We cannot concur in this view.   The deceased and his wife were awakened, about 1:30 o'clock a. m. on July 2, 1923, by some one calling for the deceased.   The deceased got up, went out on the porch, and found there persons who wanted a load of liquor.   The deceased told them that he had liquor, but that it was engaged.   After some discussion, these persons offered the deceased $4 per gallon for his liquor, and he agreed to sell them thirty gallons.   These persons were identified by the wife and son of the deceased as the defendants.   After agreeing upon the price of thirty gallons of liquor, the deceased, his wife, and their two minor sons went out to the smokehouse and got therefrom thirty gallons of liquor in kegs.   The kegs were rolled in front of the house, where the automobile in which the defendants came was standing.   Twenty gallons of the liquor were put into the automobile.   The deceased then said to the defendants: "Boys, come in and we will settle up, and then you can put the other in."   Robinson picked up the ten-gallon keg and put it in the automobile.   The deceased then said: "Come in and let's settle up."   Robinson then went around and got behind the automobile, doing something, the witnesses did not know what.   A little son of the deceased had brought a lamp to the porch.   His mother said to him: "Son, you take the lamp back out there.   When the little boy got back pretty close to the gate, the wife saw Walker, who was a negro, standing there with his gun in his hand, down by his side.   The deceased said: "You have got a gun, ain't you?"   Walker replied: "Yes, I always tote that for the law."   He then went around behind the car, and got at the back end of the car.   Robinson, who was a white man, was at the back end of the automobile next to the gate.   The negro was at the other side, right at the back of the car.   When he walked around there he said to the white man two or three times: "Get in the car."   The white man got in the car and said to the negro: "You can settle with him."   The negro then shot the deceased.   The motor of the automobile was running.   Just about the time the car started the gun fired.   There was no quarrel between the deceased and the defendants.   The negro jumped upon the running-board and held to the car.   When he did so, the white man sped up the car, and it got faster and faster.   The white man did not turn on the lights of the car until he got over the turn of

the hill, if he did then. The defendants took the liquor of the deceased, and did not pay him for it. The wife and son positively identified the defendants. When they first saw the defendants after the homicide, they promptly identified each. The jury was authorized to find the above facts to be true. If so, the negro was undoubtedly guilty of murder. How about Robinson, the white man? It seems incredible that the white man could be guiltless. They stole the dead man's liquor. The negro brutally murdered him. His white companion had the motor of the automobile running ready to speed the slayer from the scene of the tragedy. The car was just moving as the fatal shot was fired. The negro jumped upon the running-board. Faster and faster the white man drove the car away through the darkness of the night with the murderer by his side. He ran the automobile without lights. He did not report the homicide. He did not return to explain to the family of the deceased his non-participation in the brutal murder; nor did he ever pay or offer to pay for the stolen liquor, so far as the record discloses. He denied his presence at the scene of the crime. We do not say that the verdict was demanded by the evidence; but we do say that the jury was authorized to find the white man and the negro guilty of the murder of the moonshiner. The credit to be given to the witnesses who testified to the facts above narrated was for the jury. The defense of alibi was one for their consideration alone.       *Judgment affirmed. All the Justices concur.*