## COGGESHALL v. THE STATE.

1. The charges set out in divisions 2, 7, 8, 9, 10, and 13 of the opinion are not erroneous for any reasons assigned.
2. The law of involuntary manslaughter in the commission of an unlawful act not being applicable to the facts of the case, the court did not err in failing to instruct the jury on that subject.
3. Error is assigned in the 4th and 5th grounds of the motion for new trial, because the court failed to charge the jury, in effect, that if they should find and believe from the evidence that one of the other defendants jointly indicted with this movant was the actual perpetrator of the homicide of the deceased, W. C. Wright, and there was no conspiracy or plan or agreement between such actual perpetrator of said homicide and this movant to commit said crime, and this movant did not aid or abet in the commission of the crime, but was merely present at the commission of the crime, he would not be guilty of the offense of murder. This principle of law was not adjusted to the facts of the case.
4. The court below did not err in failing to instruct the jury on the principles of law applicable to the offense of assault with intent to murder. Such a charge would not be adjusted to the facts of the case, as assault with intent to murder was not involved.
5. Under the evidence in this case the court did not err in failing to charge the law of assault and battery, as such a charge would not be applicable.
6. In the absence of a timely request it is not error for the court to fail to charge the law on the subject of impeachment of witnesses.
7. On the trial of one charged with murder it was not error for the court to admit in evidence, over objection, a card which one of the State's witnesses testified he took from the person of the defendant, the card containing the names of certain cities, on the ground that it was merely a pencil entry, and that it did not appear in whose handwriting it was, who made it, when it was made, or under what circumstances, and that it was immaterial and irrelevant, etc., where it appears from the evidence that the card contained the names of cities along the route traveled by the defendant from Florida to and beyond the place where the homicide occurred. 'The evidence was admissible as tending to show that the cities of Atlanta and others, through which the defendant claimed to have traveled at the time of the homicide, were not included in his itinerary.
8. The evidence authorized the verdict, and the court did not err in refusing a new trial.

No. 4936. November 13, 1925. Rehearing denied December 18, 1925.

Murder. Before Judge Park. Putnam superior court. May 26, 1925.

*Allen & Pottle* and *Branch & Howard,* for plaintiff in error.

*George M. Napier,* attorney-general, *Joseph B. Duke,* solicitor-general, *T. R. Gress,* assistant attorney-general, *M. F. Adams,* and *Clement & Campbell,* contra.

HILL, J.   T. L. Coggeshall was jointly indicted with F. W. McClellan and S. J. Scarborough, on a charge of having murdered W. C. Wright, in Putnam County, on March 4, 1925. Coggeshall and McClellan were put upon trial, but Scarborough was not tried with them. The jury returned a verdict against Coggeshall and McClellan, finding both of them guilty of murder, without recommendation, and they were sentenced to be electrocuted. Each made a separate motion for new trial, on the usual general grounds and sixteen special grounds. The motion of Coggeshall was overruled by the court, and he excepted. The State's theory of the case was that Coggeshall, McClellan, and Scarborough left Tampa, Florida, a few days before the commission of the crime for which they stand charged, and went as far as Lake City, Florida, in a stolen automobile, which broke down at Lake City, and they abandoned the car and walked to Macon, Georgia, and from there through Eatonton and Putnam County, where the homicide occurred. The evidence for the State tended to show that all three of those indicted passed through Eatonton in Putnam County, and on March 3, 1925, spent the night in a vacant house near Eatonton, and on the morning of the 4th of March, the day of the crime, started on their way along the highway leading from Eatonton towards Athens, Georgia, and traveled a distance of some seven or eight miles north of Eatonton, at which place on the suggestion of the defendant McClellan, the defendants Coggeshall and Scarborough turned back towards Eatonton, and caught a ride in an automobile with one Hallman, riding with him towards Eatonton to a point within two miles of that place, where they left Hallman's car and started back up the road towards Athens; that they were then picked up by Prof. W. C. Wright, the deceased, who was traveling in the same direction in a Dodge touring car; that McClellan had waited by the side of the road at a point seven or eight miles north of Eatonton, and when Coggeshall and Scarborough, who were riding in the car with Wright, reached the point where McClellan was, Coggeshall struck Wright over the head with a piece of an automobile spring, which he had been carrying since the day before. This blow stunned Wright, and then the car was driven off from the main highway into the edge of some woods, and McClellan pulled Wright out of the car and dragged him into some bushes and there robbed and struck him a number of blows with

the same piece of automobile spring, inflicting wounds on his head from which he died a few days later. After this occurrence the three defendants took Prof. Wright's car and proceeded in it to Athens, Georgia, near which place the automobile was abandoned. Coggeshall and McClellan denied upon the trial that they were in any way connected with the murder, but asserted that they were not in Putnam County at the time of the commission of the crime, or at any time, claiming that when they reached Macon, Georgia, they traveled along the highway leading from Macon through Forsyth and Barnesville to Atlanta, and thence to Athens by way of Stone Mountain, Grayson, and Monroe. The three defendants were arrested on the highway leading from Athens to Danielsville, on the morning of March 5, 1925, the day after the commission of the crime. At the time they were arrested Coggeshall was not present with the other two defendants, he having gone to a house near by to beg for food. While Coggeshall was temporarily absent from the other two defendants, as above stated, a detective and officers from Athens overtook Scarborough and McClellan on the highway, placed them under arrest, and searched them. All three of the defendants were taken from the point where they were arrested to Danielsville, where they were detained for a short time, and were taken to Athens and placed in jail, and shortly afterwards were removed to the jail in Atlanta.

The evidence showed that when the defendants were arrested and searched, it was found that McClellan had in his pocket a bunch of keys which belonged to Mr. Wright, the murdered man, and also a knife which some of the witnesses identified as the property of Mr. Wright. The defendants claimed that McClellan had found these keys on the side of the road a short time before he was arrested. Mr. Wright's automobile was found near the side of the road a short distance from Athens, on the other side of Athens from where the defendants were arrested. The automobile had been abandoned at this point. The evidence also showed that there was considerable blood in the car, both on the back of the front seat and in the tonneau of the car. Witnesses for the State testified that they had seen the defendants in the vicinity of Eatonton on the day the murder was committed. These witnesses also identified the defendants from having passed them while riding in an opposite direction in an automobile traveling along the

highway. The defendants also introduced a number of witnesses who testified to having seen them at different points along the highway leading from Macon to Atlanta, and from Atlanta to Athens by way of Grayson and Monroe. One of the witnesses for the State, Scarborough, who is also one of the defendants jointly indicted with Coggeshall and McClellan, testified substantially to the effect that he and the other defendants, after leaving Macon, went through Eatonton and spent the night of March 3 in a vacant house near Eatonton; that on the morning of March 4, the day the homicide was committed, they had started towards Athens; and that when they had gone about four miles from where they had spent the night they sat down by the side of the road. "McClellan says to Coggeshall and myself to go back up the road and catch a ride back where he was at. Coggeshall and I went back up the road. We traveled to right close to where we spent the night. We rode with a man in a Ford touring car. I sat in the front seat. Coggeshall sat in the rear seat." And, after describing how they were dressed, Scarborough proceeded: "We said something to Mr. Hallman, with whom we rode in the Ford touring car, about having seen a snake that morning as we came down the road. We got out of the car at the road where it comes back in from the house where we spent the night just outside of Eatonton. Then we went in that house right across the street and asked for something to eat. Then we walked on back up the road, and Mr. Wright come along and picked us up. He was traveling in a Dodge car. I sat on the front seat. Coggeshall sat on the rear seat. On the day before this happened, I saw Coggeshall with a piece of what looked like a car spring. When he picked up that spring he didn't say nothing right then. It was later he remarked he would get some man before night. He carried the car spring in his bosom under his shirt." The witness then testified that they rode three or four miles with Prof. Wright, and that when they got back to where they had left McClellan, Coggeshall told Prof. Wright to stop, that he had dropped his cap; and then when he stopped, Coggeshall hit him with a piece of iron, that is, with the piece of car spring; he hit him twice over the head. The witness then described how Coggeshall pulled Prof. Wright over into the rear of the car and how McClellan drove the car into the woods and pulled Prof. Wright out of it, and dragged him into the bushes

and searched him, and struck him a number of times with the car spring. The above is substantially the case as stated by learned counsel for plaintiff in error, and which is borne out by the record. Able counsel argued that "the evidence by no means demanded the verdict that was rendered, and therefore, if there was any material error committed in the trial of the case, the plaintiff in error, who, as above stated, is a mere youth nineteen years of age, is entitled to a new trial, and a chance at least to escape the death penalty," etc.

1. From an examination of the evidence in the case we are of the opinion that the evidence of Scarborough, one of the alleged accomplices, is corroborated by other evidence in the case; and though the evidence is conflicting on the question of alibi, the evidence as a whole is sufficient to authorize the verdict.

2. Error is assigned in the second ground of the motion for new trial, because the court charged the jury as follows: "Now, the law says a person can be guilty of a criminal offense as principal in the first degree or as a principal in the second degree. A principal in the first degree is the actual perpetrator of the criminal offense; a principal in the second degree is one who is present aiding and abetting the principal in the first degree to commit a criminal offense, which presence need not be immediately standing by, but there may be also a constructive presence, where one keeps watch and another commits a criminal offense." It is insisted that the court in charging in general terms the law as contained in the Penal Code, § 42, failed to instruct the jury on any of the elements involved in this code section. This charge is not error for the reasons assigned, that there was no evidence justifying that portion of the charge in these words: "which presence need not be immediately standing by, but there may be also a constructive presence, where one keeps watch and another commits a criminal offense." Nor on the ground that the court did not in this portion of the charge or elsewhere instruct the jury in effect that mere presence at the commission of a crime by one who is jointly indicted with another, and where the actual perpetration of the crime was committed by one of the other defendants, would not of itself render such person, who was merely present at the commission of the crime, guilty either as a principal in the first degree or second degree. Nor is it error on the ground that the charge as given,

without further explanation and instruction, was calculated to mislead the jury into believing that under the law one who was merely present at the commission of a crime would be guilty as a principal in the second degree, even though there was no conspiracy between him and the actual perpetrator of the crime, and even though he did not participate in the commission of the crime. There was no request for a fuller charge, and we are of the opinion that the charge as given substantially in the language of the code is not erroneous for any of the reasons assigned. See, in this connection, *Berryhill* v. *State,* 151 *Ga.* 416 (107 S. E. 158) ; *Robinson* v. *State,* 158 *Ga.* 47 (4), 50 (122 S. E. 886).

3. Movants contend that the court erred in failing to instruct the jury on the law of involuntary manslaughter in the commission of an unlawful act, on the ground that the jury might have found and believed from the evidence that this movant had entered into a conspiracy with the other defendants jointly indicted with him to commit the offense of robbery, and that an assault was made upon the deceased, Wright, with a weapon not likely to produce death, and that there was no actual intention to kill and no conspiracy to kill or to commit a homicide, but that the death of the deceased resulted from an assault on the deceased with a weapon not likely to produce death, made by one of the defendants. This ground of the motion is without merit. In *Berryhill* v. *State,* supra, this court held: "Where two or more persons conspire to rob another who is employed in a building, and one of the conspirators keeps watch or guard at a convenient distance while the others enter the building and, in furtherance of the common design to rob, kill the person intended to be robbed, such killing is a probable consequence of the unlawful design to rob, and all the conspirators are guilty of murder, including the one on guard. Penal Code (1910), § 42; 1 Wharton's Crim. Law (11th ed.), § 258; Wharton on Homicide (3d ed.), 660, § 430; Clark's Crim. Law (2d ed.), 106, § 47; Brennan v. People, 15 Ill. 511; Stephens v. State, 42 Ohio St. 150; Miller v. State, 25 Wis. 384; State v. Barrett, 40 Minn. 77 (41 N. W. 463) ; Weston v. Commonwealth, 111 Pa. 251 (2 Atl. 191)." Neither did the court err in failing to instruct the jury on the law of involuntary manslaughter in the commission of an unlawful act, for the reason that the court had stated to the jury, "Now it becomes my duty to instruct the

jury upon all the principles of law applicable to the issues involved in the trial of this case." As stated above, a charge on involuntary manslaughter in the commission of an unlawful act was not applicable under the evidence and the issues in the case, and the court did not err in failing to so charge. The above also answers the criticism in the 8th ground of the motion for new trial.

4. In the 9th ground of the motion for new trial the movant alleges error because of the following charge: "Now, the defendant, T. L. Coggeshall, has also made a statement, and under § 1036 of the Criminal Code of the State of Georgia the defendant, T. L. Coggeshall, has the right to make to the court and jury just such statement as he sees proper to make in his defense. This statement is not required to be under oath, and when the defendant makes a statement it is left entirely with the jury as tô what credit you will give the defendant's statement. You have a right to accept it or you have a right to reject it, or you have a right to believe it in preference to the sworn testimony in the case, if you see proper to give it that degree of credit." The above charge is not error because the court used the words "this statement is not required to be under oath," instead of using the identical words as contained in § 1036 of the Penal Code of 1910 that it "shall not be under oath." The use of the above language was not calculated to prejudice the jury against the movant, as contended, and was not calculated to lead them to believe and understand that the defendant might under the law have made his statement under oath, but was not required to do so, whereas the law provides that this statement can not be made under oath. Nor is the charge error because the court failed to instruct the jury that they might believe a part of the defendant's statement and reject a part of it. The court did instruct the jury that they had a right to accept or they had a right to reject it, and further that the jury had a right to believe the statement of the defendant in preference to the sworn testimony in the case. *Suple* v. *State,* 133 *Ga.* 601 (2), 602 (66 S. E. 919); *Wilder* v. *State,* 148 *Ga.* 270 (2) (96 S. E. 325).

5. (10) The following charge of the court is assigned as error: "Now, the defendants in this case set up what is called the plea of alibi, and in this connection I will read you the following sec-

tion of the Criminal Code of the State of Georgia. It is § 1018. 'Alibi as a defense involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission; and the range of evidence in respect to time and place must be such as to reasonably exclude the possibility of the presence of the defendant.' Now, in this connection, I charge you that where the defendant sets up the plea of alibi, the burden is upon him to reasonably satisfy the jury of such a plea, and if the range of evidence in this case is such as to reasonably exclude the defendant's presence at the time and place of the commission of the criminal offense, if any criminal offense has been committed, why then the plea of alibi would be good." The criticism of the above charge is that when the court stated to the jury that he would read "the following section of the Criminal Code of the State of Georgia," that was not equivalent to instructing the jury that the section of the code referred to was given to them as the law applicable to the case, or charging the jury that they were to apply that principle in the trial of the case. This criticism is obviously without merit.

6. (11) The following charge of the court is assigned as error by movant: "Under § 1017 of the Criminal Code the court charges you that you would not be authorized to convict the defendants on the testimony of any accomplice alone, unless such testimony has been corroborated by other evidence or other circumstances in the case. Such corroboration, if any, must, independent of the testimony of the accomplice, be sufficient to connect the defendant with the perpetration of the criminal offense. Such corroboration, if any, as to the time, place, and circumstances of the transaction, would not be sufficient, but the corroboration must, independently of the testimony of the accomplice, be sufficient to directly connect the defendants with the perpetration of the criminal offense, if any has been committed." The criticism is that the court, by the use of the words, "such corroboration, if any, as to the time, place, and circumstances of the transaction would not be sufficient, but the corroboration must, independently of the testimony of the accomplice, be sufficient to directly connect the defendants with the perpetration of the criminal offense, if any offense has been committed," entirely omits the essential element and principle that the corroborating evidence must be sufficient, independently of the testimony of the accomplice, to prove the corpus delicti. This

criticism is without merit.  *Wilburn* v. *State,* 141 *Ga.* 510 (10)
(81 S. E. 444) ; *Joiner* v. *State,* 119 *Ga.* 315 (46 S. E. 412).

7. (12) Movant assigns error on the following charge of the
court: "In the event you should reach the conclusion that there
are conflicts in the testimony of the witnesses that can not be
reconciled upon any reasonable basis, upon passing upon the ques-
tion of what witness or witnesses you are to believe, why then you
take into consideration every fact and every circumstance devel-
oped in the trial of this case. You take into consideration the
manner and demeanor of the witnesses upon the stand; you take
into consideration the knowledge of the facts or the want of knowl-
edge of the facts testified to by the witnesses; you take into con-
sideration the intelligence or want of intelligence of the witnesses,
so far as the same legitimately appears from the trial of this case;
you take into consideration the opportunities of the witnesses
knowing the facts to which they testify. You also take into con-
sideration the prejudice or bias, or the want of prejudice or bias,
that any witness may have that has testified in the trial of this
case, the interest or want of interest that any witness may have
in the result of the trial of this case, the probability or the im-
probability of the facts testified to by the witnesses, the personal
credibility of the witnesses so far as the same legitimately appears
from the trial of the case." The criticism of the charge is that
the court in effect, by the use of the words, "you take into consid-
eration the manner and demeanor of the witnesses upon the stand;
you take into consideration the knowledge of the facts or the want
of knowledge of the facts testified to by the witnesses; you take
into consideration the intelligence or want of intelligence of the
witnesses; you take into consideration the opportunities or means
of the witnesses knowing the facts about which they testify, or
the want of means or opportunities of the witnesses knowing the
facts about which they testify; you take into consideration the
prejudice or bias or the want of prejudice or bias that any wit-
ness may have, the interest or want of interest that any witness
may have in the result of the trial of this case," etc., instructed the
jury in effect that it was mandatory to take these several matters
into consideration, instead of instructing the jury that they *might*
take these matters into consideration, and thereby invaded the
province of the jury. This criticism of the charge is without merit.

*Robinson* v. *State,* 158 *Ga.* 47 (5), 48 (122 S. E. 886) ; *Jordan* v. *State,* 130 *Ga.* 406 (3) (60 S. E. 1063).

8. Ground 13 of the motion for new trial assigns error upon the following charge of the court: "Now, applying the principles of law as given you in charge by the court to the facts in evidence in this case, if you are satisfied to a reasonable and moral certainty and beyond a reasonable doubt of the guilt of the defendants that are now upon trial, it would be your duty to convict them; but if you have any reasonable doubt growing out of the evidence or the want of evidence, or engendered by the defendants' statements, it would be equally your duty to return verdicts of not guilty against the defendants." The criticism is that the effect of this charge was to instruct the jury that they must convict *both* of the defendants on trial, or acquit *both* of the defendants on trial, and that the court erred in not instructing the jury in this connection that they would be authorized, if they should so find under the law and evidence, to find one of the defendants guilty and to acquit the other defendant on trial. By reference to the entire charge of the court it will be apparent that this ground of the motion for new trial is without merit. The court in its general charge instructed the jury to consider the evidence as to each of the defendants *separately,* and the record shows that the jury did return *separate verdicts* as to the plaintiff in error here, and the other defendant, McClellan.

9. Movant alleges error in ground 15 of the motion for new trial, because the court failed to charge the law applicable to impeachment of witnesses, especially as the court in beginning the charge to the jury stated to them "Now, it becomes my duty to instruct the jury upon all the principles of law applicable to the issues involved in the trial of this case." Movant says that testimony was introduced by the defendants tending to impeach the witness Scarborough, who was introduced as a witness for the State. This ground is without merit. In the absence of a timely request it is not error for the court to fail to charge the law with reference to impeachment of witnesses. *Benjamin* v. *State,* 150 *Ga.* 78 (102 S. E. 427) ; *Brady* v. *State,* 159 *Ga.* 469 (4) (126 S. E. 250) ; *Perdue* v. *State,* 135 *Ga.* 277 (6), 278 (69 S. E. 184).

10. The 16th ground of the motion for new trial complains that the court erred in admitting in evidence, over objection of defend-

ants' counsel, a card which the State's witness, C. A. Lester, testified he took from the person of the defendant Coggeshall, the card containing the names of the following cities, to wit, Brooklyn, Florida; Valdosta, Macon, Athens, Ga.; Anderson, S. C.; Charlotte, Durham, N. C.; Clarkesville, Petersburg, Richmond, Virginia; Washington, D. C. Defendants' counsel objected to the admission of said card in evidence, on the ground that it is merely a list of cities ranging from Florida to Washington, D. C., and that it appears to be merely a pencil entry, and it does not appear in whose handwriting it was, who made it, when it was made, or under what circumstances it was made, and that it is immaterial, irrelevant, and has no probative value. We are of the opinion that this ground of the motion is not well taken. The evidence admitted was relevant, and the court did not err in allowing it introduced and read to the jury. This card set out the names of the cities along the route the evidence showed was followed by the defendants in their journey from Florida to and beyond the city of Athens, Georgia. It tended to show that the city of Atlanta and the towns of Forsyth and Barnesville, through which the defendants claimed to have gone, were not included in their itinerary.

11. Other headnotes require no elaboration.

*Judgment affirmed. All the Justices concur.*