In order to convict for the murder of a newly born baby, it is incumbent upon the State to prove that the child was born alive and had an independent and separate existence from its mother, and that it was slain by the accused.
A proved confession of the accused showing all of these elements, when corroborated by independent evidence in material respects, including the corpus delicti, is sufficient to authorize a verdict of guilty.
The law does not require that the corpus delicti be proved beyond a reasonable doubt by independent evidence as a condition precedent to the consideration by the jury of a confession, but the confession itself may legally and properly be considered as a part of the proof of the corpus delicti.
 No. 15028. NOVEMBER 21, 1944. REHEARING DENIED DECEMBER 4, 1944.
Ruby Logue was convicted for the murder of a newly born unnamed female child of her unmarried sister, Anna Logue. She brings the case to the Supreme Court by writ of error excepting to the judgment overruling her motion for new trial, which shows only the general grounds to the effect that the verdict was not authorized by the evidence. The State introduced a policewoman of the City of Macon, Mrs. McCord, who testified to a conversation she had with the accused in the presence of a policeman. This witness testified that the accused said that she and the mother of the child were unmarried sisters; that on the day before the child was born, in company with a Mrs. Kersey who lived in the same house with them, she and the mother went to a doctor at Milan, who performed an abortion; that the accused paid him $50 of money belonging to the mother, Anna; that, upon returning to Macon, she noticed that the seat of the automobile where the mother had been sitting was wet; that, when they arrived at home, Anna said that she felt something wet running down her leg; that during the night the baby was born; that the efforts of the accused to obtain a physician, ambulance, or a taxi by telephone were unavailing; that she aided her sister Anna in delivering the child; that she thought that her sister had been pregnant about four months; that the baby lived about five or ten minutes after it was born, and cried; that she gave it artificial respiration, and, when asked where its body was, said that she buried it under the house. The accused asked the witness if they were going to dig the baby up, and, when *Page 673 
the witness answered affirmatively, the accused said, "When you dig the baby up you are going to find its neck cut;" and that she thought that the doctor who performed the abortion must have cut it with the instrument. To this the witness replied that such would have been impossible, and stated to the accused that, if the baby's throat was cut, evidently she did it, and then she asked the accused, "Did you cut that baby's throat?" The answer was, "Yes, ma'm, I did." The witness asked, "What did you cut it with?" Answer, "A knife;" stating that the knife was on the kitchen stove. The policeman present went in the kitchen and came back with the knife, and they asked the accused if that was the knife with which she cut the baby's throat, and she replied that it was. The accused was very nervous, but talked like she knew what she was talking about. She cried and said that she went to pieces when the baby cried and did not realize what she was doing. She did not want the family to have the disgrace. This witness testified that the baby's body was found buried under the house where the accused said she buried it. It was about two and a half feet deep, and was buried with dirt and brick, and some boxes with empty fruit jars were pulled up over where the body was buried.
The policeman testified to substantially the same facts as given by Mrs. McCord. The physician who performed the autopsy testified that he took the baby's lung and gave it a hydrostatic test, and that from this test, together with the color of the lung, it was his opinion that the baby was born alive and had an independent existence. He testified that its head was severed from the body except a small portion of skin at the back of the neck, and that in his judgment this caused its death. On cross-examination, he admitted that the presence of air in the lung was not an infallible test to show life after birth, that the umbilical cord had not been tied, and that this alone could cause the child to bleed to death.
The defendant made a statement, in which she denied having done any harm to the child, and denied also having told Mrs. McCord that the child cried and that she cut its throat. She stated that the child was born dead; that she attempted to revive it by artificial respiration, and, failing in this, she thought of putting the body in the commode, and for this purpose started to cut the body so that it might be passed into the sewer through the commode; but that, when she cut it once, she could not cut it any more; *Page 674 
and that she buried it under the house because she wanted to avoid embarrassment to her family, which the procurement of a burial permit would have caused.
Counsel for the accused contend that when tested by the rule in Shedd v. State, 178 Ga. 653
(173 S.E. 847), the evidence here does not authorize the verdict. The decision relied upon clearly holds that, in order to convict one charged with the murder of a newly born infant, the evidence must show that the child was born alive and had acquired an independent circulation and existence separate from its mother. The evidence here must meet that standard if the judgment excepted to is affirmed. If it be conceded that the confession here is sufficiently corroborated, there can be no doubt that the evidence authorized the verdict of guilty. It is not contended by counsel that the evidence of the prosecution fails to corroborate the confession. Indeed, there is corroboration in many respects. But it is insisted that the decision in Bines v. State,118 Ga. 320 (45 S.E. 376, 68 L.R.A. 33), is authority for the proposition that the corpus delicti must be established beyond a reasonable doubt by evidence other than the confession. It was held in that decision that the corpus delicti could not be proved "by the mere extrajudicial confession of the accused. There must be aliunde proof of the corpus delicti." We do not understand that the decision relied upon held or intended to imply that the corroboration necessary to authorize a conviction upon a confession, referred to in the Code, § 38-420, means corroboration in some specified or particular portion of the confession; and that corroboration of that portion of the confession showing the corpus delicti would be insufficient to satisfy the requirements of the statute. The case there under consideration involved arson, and as pointed out in the opinion, on authority of Phillips v. State, 29 Ga. 105, and Murray
v. State, 43 Ga. 256, "The law presumes the fire to have been accidental;" and, hence, the mere fact that the barn burned did not show or intimate that it was felonious. We think that the meaning of the statute in reference to corroboration was properly stated by this court in Holsenbake v. State, 45 Ga. 43, 56
(5). In the opinion, it is said: "If one confesses that he had committed a crime, that is not sufficient *Page 675 
to convict. But if it be proven that just such a crime as he acknowledges was, in fact, committed, does not this corroborate his confession? The Code does not fix the amount of corroboration. It does not say that it shall be corroborated in a number of particulars, but simply that a confession alone, uncorroborated by other evidence, shall not be sufficient. Torequire a confession to be corroborated in every particular,would be to say that a confession is not sufficient, unless therebe other evidence, sufficient without the confession, which wouldbe absurd. We do not feel authorized to draw any line. The confession must be corroborated, but how far, and in what particulars, is not said. . . Each case must stand on its own footing, the jury being the judges." (Italics ours.) In Wilburn
v. State, 141 Ga. 510 (10) (81 S.E. 444), this court, in ruling on an exception to a charge, which exception contended that the confession could not be considered in connection with other evidence in proving the corpus delicti, but that this must be proved by evidence wholly independent of the confession, said: "The exception is not meritorious. Section 1031 [now § 38-420] of the Penal Code declares: `A confession alone, uncorroborated by other evidence, will not justify a conviction,' clearly intimating, by the use of the word `alone,' that the confession may be considered along with other evidence, and, if the corroborating evidence be sufficient, a conviction will be justified." In the opinion there, reference is made to that portion above quoted from the decision in Bines v. State, supra, and it is said that the use of the word "mere" clearly indicates that the confession was not to be entirely excluded from the consideration of the jury in passing on the question as to whether the corpus delicti had been proved. Anything ruled inClay v. State, 176 Ga. 403 (168 S.E. 289), in conflict with the above ruling, concurred in by all six Justices, is unsound and will not be followed. See, in this connection,Joiner v. State, 119 Ga. 315 (46 S.E. 412); Buckhanon v.State, 151 Ga. 827 (108 S.E. 209); Coggeshall v. State,161 Ga. 259 (131 S.E. 57); Sheffield v. State, 188 Ga. 1
(2 S.E.2d 657); Wade v. State, 195 Ga. 870
(25 S.E.2d 712). On authority of the decisions referred to and the plain language of the statute, we hold that corroboration of the confession in any material particular satisfies the requirements of the law, and, with this done, the confession is properly submitted to the jury, and it is the exclusive province of the jury to determine *Page 676 
whether or not the corroboration is sufficient to satisfy them of the guilt of the accused beyond a reasonable doubt, and their verdict when thus made will not be set aside on the ground that the evidence is insufficient. There is no rule of law that requires, as a condition precedent to the consideration of a confession, that the corpus delicti be established beyond a reasonable doubt by independent evidence. If, as here, the confession shows the corpus delicti, and it is corroborated on this point by the testimony of the physician who performed the autopsy, the two together constitute legal evidence upon which the jury is authorized to find that the corpus delicti has been proved beyond a reasonable doubt. The testimony of the physician in this case, to the effect that in his opinion gained from the autopsy the infant was born alive and came to its death as the result of the wound found upon its body which virtually severed its head, while being insufficient to show beyond a reasonable doubt that the baby was born alive or that the wound was inflicted after the baby had an independent and separate existence from its mother, is yet sufficient to show a strong likelihood that these things were true, and, when aided by the confession of the accused that the baby did live five or ten minutes, that it cried, and that she cut its throat with a knife and then buried it under the house, is sufficient to authorize the jury to find the defendant guilty beyond a reasonable doubt of the charge of murder. The evidence being sufficient to authorize the verdict, the court did not err in overruling the motion for new trial, which contains the general grounds only.
Judgment affirmed. All the Justices concur except